**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ELIZABETH B. SANDZA,

*Plaintiff*,

v.

BARCLAYS BANK PLC, IAIN WORSLEY,
SALLY MARTIN, AND ANDREW JOHNMAN,

*Defendants*.

15 cv 00732 (JDB)

**ORAL ARGUMENT
REQUESTED**

**MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) FILED BY
BARCLAYS BANK PLC, IAIN WORSLEY, AND ANDREW JOHNMAN AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

PLAINTIFF'S ALLEGATIONS ......................................................................................... 2

ARGUMENT ....................................................................................................................... 5

I.   LEGAL STANDARD................................................................................................. 5

II.  THE COMPLAINT CONTRADICTS PLAINTIFF'S OWN THEORY AND HINGES
     ON A READING OF THE LOAN DOCUMENTS THAT HAS ALREADY BEEN
     REJECTED AS A MATTER OF LAW BY AN ENGLISH COURT APPLYING
     CONTRACTUALLY CHOSEN ENGLISH LAW. ............................................................ 7

     A.  The Complaint flatly contradicts Plaintiff's own story.................................. 7

     B.  Plaintiff's reading of the Loan Agreement is wrong as a matter of law. ..................... 9

III. PLAINTIFF'S RICO CLAIMS ARE BARRED BY THE PRIVATE SECURITIES
     LITIGATION REFORM ACT'S RICO BAR. ................................................................ 13

IV.  PLAINTIFF'S CLAIMS ARE TIME-BARRED.................................................... 17

     A.  Plaintiff's RICO claims are time-barred. ................................................... 17

     B.  Plaintiff's other claims are time-barred. ................................................... 19

         1.  Fraud ............................................................................................ 20

         2.  Criminal Conspiracy ................................................................... 22

         3.  Aiding and Abetting ..................................................................... 22

         4.  Negligence .................................................................................... 23

         5.  Breach of Fiduciary Duty............................................................ 23

         6.  Request For Declaratory Judgment............................................. 23

V.   THE COMPLAINT IS DEFICIENT IN NUMEROUS OTHER RESPECTS................. 24

     A.  Plaintiff's RICO claims are legally deficient........................................... 24

         1.  Plaintiff has failed to plead essential elements of a RICO claim
             under 18 U.S.C. § 1962(c). ...................................................... 24

i.   The Complaint does not adequately plead that the individual defendants participated in the alleged scheme. ................................................ 24

ii.  The Complaint does not adequately plead the existence of an enterprise. ..... 25

iii. The Complaint fails to allege predicate acts of racketeering activity with the requisite particularity. ...................................................................... 26

iv.  The Complaint fails to allege a pattern of racketeering activity with the requisite specificity. ...................................................................... 28

2.   The Complaint fails to state a claim for respondeat superior liability. ................. 28

3.   The Complaint fails to state a claim under 18 U.S.C. §1962(a). ......................... 29

4.   The Complaint fails to state a conspiracy claim under 18 U.S.C. § 1962(d). ........ 30

B.  PLAINTIFF'S STATE LAW CLAIMS ARE ALSO INADEQUATELY PLED............ 31

1.   Plaintiff has not satisfied Rule 9(b)'s heightened pleading requirements. ........... 31

i.   Plaintiff has not adequately alleged that Barclays owed her a duty to speak. 32

ii.  The Complaint does not provide the requisite factual particularity concerning the alleged omissions. .................................................... 36

iii. Plaintiff has not adequately pleaded reasonable reliance. ............................. 36

2.   Plaintiff's aiding and abetting claim fails as a matter of law. .............................. 37

3.   Plaintiff's negligence claim fails as a matter of law. .......................................... 39

4.   Plaintiff's fiduciary breach claim fails as a matter of law. .................................. 42

5.   Plaintiff's criminal conspiracy claim fails as a matter of law. ............................. 42

6.   Plaintiff's declaratory judgment claim should also be dismissed. ........................ 43

CONCLUSION ................................................................................................................ 43

# TABLE OF AUTHORITIES

**Cases**

*3M Co. (Minnesota Min. & Mfg.) v. Boulter,*
    842 F. Supp. 2d 85 (D.D.C. 2012) ................................................................37

*3M Co. (Minnesota Min. & Mfg.) v. Browner,*
    17 F.3d 1453 (D.C. Cir. 1994) ................................................................ 19

*A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.,*
    62 F.3d 1454 (D.C. Cir. 1995) ................................................................ 19

*Abou-Hussein v. Gates,*
    657 F. Supp. 2d 77 (D.C. Cir. June 11, 2010) ................................................ 43

*Acosta Orellana v. CropLife Int'l,*
    711 F. Supp. 2d 81 (D.D.C. 2010) ........................................................ 7, 38

*Affco Investments 2001, L.L.C. v. Proskauer Rose, L.L.P.,*
    625 F.3d 185 (5th Cir. 2010) ................................................................ 16

*Ago v. Begg, Inc.,* RICO Bus. Disp. Guide 6881,
    1988 WL 75224 (D.D.C. Feb. 24, 1988) .................................................... 24

*Aguilar v. RP MRP Washington Harbour, LLC,*
    98 A.3d 979 (D.C. 2014) ..................................................................... 42

*Anderson v. USAA Cas. Ins. Co.,*
    221 F.R.D. 250 (D.D.C. 2004) ................................................................ 7

*Aneke v. Am. Exp. Travel Related Servs.,* Inc.,
    841 F. Supp. 2d 368 (D.D.C. 2012) ........................................................ 10

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................... 5

*Azar v. Nat'l City Bank,*
    382 Fed. Appx. 880 (11th Cir. 2010) ........................................................ 8

*\*Baker v. Gurfein,*
    744 F. Supp. 2d 311 (D.D.C. 2010) .................................................... 36, 37

*\*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.,*
    189 F.3d 321 (3d Cir. 1999) .......................................................... 13, 14, 16

*Banque Arabe et Internationale D'Investissement v. Maryland National Bank*,
    57 F.3d 146 (2d Cir. 1995) ............................................................................. 34

*Bates v. Nw. Human Servs., Inc.*,
    466 F. Supp. 2d 69 (D.D.C. 2006) ............................................................. 26, 27

*Belanger v. BAC Home Loans Servicing*,
    839 F. Supp. 2d 873 (W.D. Tex. 2011) ........................................................... 8

*Bell v. Grant*, No. CIV.A 09 1868,
    2009 WL 3135442 (D.D.C. Sept. 30, 2009) ................................................. 43

*Benchmark Electronics, Inc. v. JM Huber Corp.*,
    343 F. 3d 719 (5th Cir. 2003) ....................................................................... 35

*Bennett v. Kiggins*,
    377 A.2d 57 (D.C. 1977) ................................................................................ 6

*Bixler v. Foster*,
    596 F.3d 751 (10th Cir. 2010) ..................................................................... 16

*Bridges v. Blue Cross & Blue Shield Ass'n*, 9
    35 F. Supp. 37 (D.D.C. 1996) ...................................................................... 29

*Brink v. Cont'l Ins. Co.*,
    787 F.3d 1120 (D.C. Cir. 2015) ................................................................... 24

*Brittingham v. Mobil Corp.*,
    943 F.2d 297 (3d Cir.1991) ......................................................................... 29

*Brown v. Wachovia Bank*,
    No. CIV.A.06 0153 RMC, 2007 WL 1378491 (D.D.C. May 10, 2007) ......... 18

*Busby v. Capital One, N.A.*,
    932 F. Supp. 2d 114 (D.D.C. 2013) .......................................................... 7, 40

*Cadet v. Draper & Goldberg, PLLC*,
    No. CIV.A. 05-2105 (JDB), 2007 WL 2893418 (D.D.C. Sept. 28, 2007) ......... 7

*Capital Inv. Funding, LLC v. Field*,
    Fed. Sec. L. Rep. P 98350, 2015 WL 247720 (D.S.C. Jan. 20, 2015) ............ 14

*Carroll v. Fremont Inv. & Loan*,
    636 F. Supp. 2d 41 (D.D.C. 2009) ........................................................... 33, 38

*Carter v. Bank of Am, N.A.*,
    888 F. Supp. 2d 1 (D.D.C. 2012) ................................................................. 39

*Choharis v. State Farm Fire and Cas. Co.*,
    961 A.2d 1080 (D.C.2008) ........................................................................... 39

*City of Harper Woods Employees' Ret. Sys. v. Olver*,
    589 F. 3d 1292 (D.C. Cir. 2009) ................................................................... 4

*Clouser v. Temporaries, Inc.*,
    730 F. Supp. 1127  (D.D.C. 1989) .............................................................. 20

*Cope v. Anderson*,
    331 U.S. 461 (1947) ..................................................................................... 23

*Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*,
    No. CV 09-2030 (CKK), 2015 WL 10212808 (D.D.C. Mar. 6, 2015) ........... 37

*Craighead v. E.F. Hutton & Co., Inc.*,
    899 F.2d 485 (6th Cir. 1990) ...................................................................... 29

*Crawford v. D.C.*,
    891 A.2d 216 (D.C. 2006) ........................................................................... 23

*Curtis v. Lanier*,
    535 F. Supp. 2d 89 (D.D.C. 2008) .............................................................. 22

*D.C. Transit Sys., Inc. v. Harris*,
    284 A.2d 277 (D.C. 1971) ........................................................................... 41

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*,
    941 F.2d 1220 (D.C. Cir. 1991) ................................................................... 29

*DeBenedictis v. Merrill Lynch & Co.*,
    492 F.3d 209 (3d Cir. 2007) ........................................................................ 20

*Dodd v. Infinity Travel*,
    90 F. Supp. 2d 115 (D.D.C. 2000) ......................................................... 25, 30

*Doe I v. State of Israel*,
    400 F. Supp. 2d 86 (D.D.C. 2005) ..................................................... 24, 25, 30

*Donald Marshall Berlin v. Bank of Am, N.A.*,
    No. CV 14-1306 (JEB), 2015 WL 1873219 (D.D.C. Apr. 24, 2015) .............. 43

v

*Dupree v. Jefferson,*
    666 F.2d 606 (D.C. Cir. 1981) ..................................................................... 23

*E. Sav. Bank, FSB v. Papageorge,*
    31 F. Supp. 3d 1 (D.D.C. 2014) .................................................................. 26

*E.F. Hutton Mortgage Corp. v. Pappas,*
    690 F. Supp. 1465 (D. Md. 1988) ........................................................... 41, 42

*Eagletech Communications, Inc. v. Citigroup, Inc.,*
    Case No. 07-60668 2008 WL 3166533 (S.D. Fla., June 27, 2008) ................... 14

*Edmondson & Gallagher v. Alban Towers Tenants Ass'n,*
    48 F.3d 1260 (D.C. Cir. 1995) ..................................................................... 30

*Ellipso, Inc. v. Mann,*
    541 F. Supp. 2d 365 (D.D.C. 2008) .............................................................. 32

*Findlay v. CitiMortgage, Inc.,*
    813 F. Supp. 2d 108 (D.D.C. 2011) ........................................................ 39, 40

*Friends Christian High Sch. v. Geneva Fin. Consultants,*
    39 F. Supp. 3d 58 (D.D.C. 2014) ................................................................. 39

*Gerace v. Liberty Mut. Ins. Co.,*
    264 F. Supp. 95 (D.D.C 1966) ............................................................... 39, 42

*Grant Thornton, LLP v. Office of Comptroller of the Currency,*
    514 F.3d 1328 (D.C. Cir. 2008) ................................................................... 25

*Green Leaf Nursery v. EI DuPont De Nemours,*
    341 F. 3d 1292 (11th Cir. 2003) .................................................................. 35

*Griggs v. Wash. Metro. Area Transit Auth.,*
    232 F.3d 917 (D.C.Cir.2000) ...................................................................... 23

*Halberstam v. Welch,*
    705 F.2d 472 (D.C.Cir.1983) ...................................................................... 38

*Hancock v. Homeq Servicing Corp.,*
    No. CIV.A. 05-0307PLF, 2007 WL 1238746 (D.D.C. Apr. 27, 2007) ............... 22

*\*Hargraves v. Capital City Mortgage Corp.,*
    140 F. Supp. 2d 7 (D.D.C. 2000) ................................................................. 18

*Harpole Architects, P.C. v. Barlow,*

668 F. Supp. 2d 68 (D.D.C. 2009) ............................................................................ 25, 28

*Haynes v. Navy Fed. Credit Union*,
52 F. Supp. 3d 1 (D.D.C. 2014) ................................................................................ 33

*Hercules & Co. v. Shama Rest. Corp.*,
613 A.2d 916 (D.C. 1992) ........................................................................................ 36

*High v. McLean Fin. Corp.*,
659 F. Supp. 1561, 55 USLW 2702 (D.D.C. 1987) .................................................. 40

*Hite v. Leeds Weld Equity Partners, IV, LP*,
429 F. Supp. 2d 110 (D.D.C. 2006) ........................................................................... 7

*Hollinger Int'l, Inc. v. Hollinger Inc.*, Case No. 04-C-0698,
2004 WL 2278545 (N.D. Ill., Oct 8, 2004) .............................................................. 15

*Howard v. Am. Online Inc.*,
208 F.3d 741 (9th Cir. 2000) ................................................................................... 16

*Ihebereme v. Capital One, N.A.*,
933 F. Supp. 2d 86 (D.C. Cir. 2014) .......................................................................... 6

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
763 F. Supp. 2d 423 (S.D.N.Y. Sept. 13, 2011) ....................................................... 20

*In re Ikon Office Solutions*,
86 F. Supp. 2d. 481, 487 (E.D. Pa. 2000) ................................................................ 16

*In re LIBOR-Based Financial Instruments Antitrust Litigation*,
935 F.Supp. 2d 666 (S.D.N.Y. 2013) ....................................................................... 14

*Intelsat USA Sales Corp. v. Juch-Tech, Inc.*,
935 F. Supp. 2d 101 (D.D.C. 2013) .......................................................................... 43

*Jackson v. Am. Red Cross*,
No. CIV. A. 91-2465(JHG), 1992 WL 172566 (D.D.C. June 30, 1992) .................... 23

*Jackson v. Chavez*,
No. A-11-CA-417-LY, 2013 WL 3328683 (W.D. Tex. June 26, 2013) ........................ 8

*Jefferson v. Collins*,
905 F. Supp. 2d 269 (D.D.C. 2012) ............................................................................ 7

*Johnson v. Computer Tech. Servs., Inc.*,
670 F. Supp. 1036 (D.D.C. 1987) .......................................................................... 27, 28

*Jolevare v. Alpha Kappa Alpha Sorority, Inc.*,
521 F. Supp. 2d 1 (D.D.C. 2007) ................................................................................ 39

*Jones v. Meridian Towers Apartments, Inc.*,
816 F. Supp. 762 (D.D.C. 1993) ................................................................................. 25

*K&S Partnership v. Continental Bank, N.A.*,
127 F.R.D. 664 (D. Neb. 1989) .................................................................................. 29

*Kapiloff v. Abington Plaza Corp.*,
59 A.2d 516 (D.C. 1948) ............................................................................................ 32

*Kerns v. Ameriprint, Inc.*,
621 A.2d 381 (D.C.1993) ........................................................................................... 19

*Krock v. Lipsay*,
97 F. 3d 640 (2nd Cir 2006) ...................................................................................... 35

*Krombein v. Gali Serv. Indus., Inc.*,
317 F. Supp. 2d 14 (D.D.C. 2004) ............................................................................. 41

*Lee v. United States*,
570 F. Supp. 2d 142 (D.D.C. 2008) ........................................................................... 40

*Licht v. Watson*,
567 F. App'x 689 (11th Cir. 2014) ....................................................................... 14, 16

*Lightening Lube, Inc. v. Witco Corp.*,
4 F.3d 1153 (3d Cir. 1993) ......................................................................................... 29

*Ling v. Deutsche Bank*,
95 A.F.T.R.2d 2005 WL 1244689 (S.D.N.Y. May 26, 2005) .......................................... 14

*Ling Yuan Hu v. George Washington Univ.*,
766 F. Supp. 2d 236 (D.D.C. 2011) ...................................................................... 19, 23

*McIntosh v. Washington*,
395 A.2d 744 (D.C. 1978) ........................................................................................... 23

*McQueen v. Woodstream Corp.*,
244 F.R.D. 26 (D.D.C. 2007) ...................................................................................... 17

*Mikhlin v. HSBC*,
  No. 08-CV-1302 (CPS) 2009 WL 485667 (E.D.N.Y. Feb. 26, 2009) ............................ 29

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
  651 F.3d 268 (2d Cir. 2011) .................................................................................... 16, 17

*Nader v. Democratic Nat. Comm.*, 567 F.3d 692 (D.C. Cir. 2009) ............................ 22

*Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*,
  352 F. App'x 945 (5th Cir. 2009) ...................................................................................... 8

*\*Overseas Private Inv. Corp. v. Industria de Pesco, N.A., Inc.*,
  920 F. Supp. 207 (D.D.C. 1996) ..................................................................................... 33

*Palmer v. GMAC Commercial Mortgage*,
  628 F. Supp. 2d 186 (D.D.C. 2009) .................................................................................. 6

*\*Plummer v. Safeway, Inc.*,
  934 F. Supp. 2d 191 (D.D.C. 2013) ................................................................. 6, 7, 37, 40

*Pomeroy v. Schlegel Corp.*,
  780 F. Supp. 980 (W.D.N.Y. 1991) ................................................................................ 22

*Prunte v. Universal Music Grp.*,
  484 F. Supp. 2d 32 (D.D.C. 2007) .................................................................................. 33

*Redmon v. United States Capitol Police*,
  2015 WL 682404 (D.D.C. Feb. 18, 2015) ........................................................................ 6

*Redmond v. State Farm Ins. Co.*,
  728 A.2d 1202 (D.C. 1999) ............................................................................................ 41

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank NV*,
  68 F.3d 1478 (2d Cir. 1995) ........................................................................................... 34

*Republic Prop. Trust v. Republic Properties Corp.*,
  540 F. Supp. 2d 144 (D.D.C. 2008) ............................................................................... 32

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ........................................................................................................ 25

*Rice v. Holder*,
  898 F. Supp. 2d 291 (D.D.C. 2012) ............................................................................... 42

*Rotella v. Wood,*
    528 U.S. 549, 553 (2000) ........................................................................... 18

*Rouse v. Berry,*
    680 F. Supp. 2d 233 (D.D.C. 2010) ............................................................ 5

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP,*
    682 F.3d 1043 (D.C. Cir. 2012) ......................................................... 30, 31

*Saucier v. Countrywide Home Loans,*
    64 A.3d 428 (D.C. 2013) ........................................................................... 32

*Sell v. Zions First Nation Bank,*
    No. CV 05 0684 PHX SRB, 2006 WL 322469 (D. Ariz. Feb. 9, 2006) ......... 14

*Shearin v. E.F. Hutton Group, Inc.,*
    885 F.2d 1162 (3d Cir. 1989) .................................................................... 29

*Sibley v. Breyer,*
    456 F. Supp. 2d 43 (D.D.C. 2006) ............................................................. 6

*Silverman v. Weil,*
    662 F. Supp. 1195 (D.D.C. 1987) .............................................................. 38

*Slinski v. Bank of Am., N.A.,*
    981 F. Supp. 2d 19 (D.D.C. 2013) ............................................................. 11

*Staehr v. Hartford Fin. Servs. Grp., Inc.,*
    547 F.3d 406 (2d Cir. 2008) ...................................................................... 20

*Sununu v. Philippine Airlines, Inc.,*
    792 F. Supp. 2d 39 (D.D.C. 2011) ............................................................. 32

*Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP,*
    612 F. Supp. 2d 267 (S.D.N.Y. 2009) ....................................................... 17

*United States v. Bank of Am.,*
    303 F.R.D. 114 (D.D.C. 2014) ................................................................... 22

*Urban Investments, Inc. v. Branham,*
    464 A.2d 93 (D.C. 1983) ........................................................................... 33

*USA Certified Merchs., LLC v. Koebel,*
    262 F. Supp. 2d 319 (S.D.N.Y. 2003) ....................................................... 29

*Western Assoc. Ltd. P'ship v. Mkt. Square Assoc.*,
   235 F.3d 629 (D.C. Cir. 2001) ....................................................................... 28

*Wallace v. Abramson*, RICO Bus. Disp. Guide 6963,
   1988 WL 63065 (D.D.C. June 7, 1988) ............................................... 26, 27, 28

*Washington Post v. Robinson*,
   935 F.2d 282 (D.C. Cir. 1991) ....................................................................... 20

*Watson v. Norris*,
   No. CIV. A. 89-0625(CRR), 1991 WL 7165 (D.D.C. Jan. 11, 1991) .............................. 25

*Whittington v. United States*,
   867 F. Supp. 2d 102 (D.D.C. 2012) ................................................................... 8

*Williams v. Chu*,
   641 F. Supp. 2d 31 (D.D.C. 2009) ...................................................................20

*Yellow Bus Lines, Inc. v. Local Union 639*,
   839 F.2d 782 (D.C. Cir. 1988) ....................................................................... 28

*Youkelsone v. F.D.I.C.*,
   910 F. Supp. 2d 213 (D.D.C. 2012) ................................................................. 18

## Statutes

15 U.S.C.A. § 80b-2 ......................................................................................... 15

*D.C. Code § 12-301 .......................................................................................19

*New York Partnership Law § 41 .................................................................... 4, 34

*PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995 ................................................... *passim*

## Other Authorities

RESTATEMENT (SECOND) OF TORTS § 464 (1965) ....................................................... 41

## PRELIMINARY STATEMENT

Plaintiff is a former partner in the Dewey & LeBoeuf law firm (together with its predecessor entities, "Dewey") who, when the firm went bankrupt in 2012, lost her capital investment (mostly borrowed from Barclays Bank) and some deferred compensation she was promised.  As the Court may know, certain Dewey managers—that is, the persons hired by Plaintiff and her former partners to run their law firm—have pled guilty to, or been charged with, cooking the firm's books in order to deceive its lenders.  Indeed, like representatives of other lenders, Defendant Andrew Johnman (a former Barclays employee who oversaw the Dewey account) testified for the prosecution at the ongoing criminal trial of three Dewey managers to explain how the banks were victimized by the fraud.

But Plaintiff has decided that she knows better than the prosecutors who painstakingly investigated Dewey's demise without turning up any evidence of improper conduct by any of the Defendants.  She blames Barclays and has cobbled together a sketchy, self-contradictory story of a supposed scheme—a RICO conspiracy no less—between firm management (against whom she has released her claims) and any Barclays employees who had any involvement whatsoever[1] with the Dewey portfolio to defraud Dewey's partners.

---

[1] For example, Plaintiff has named as a defendant, but not yet succeeded in serving, a Barclays employee named Sally Martin.  Ms. Martin is in a junior administrative role in London and her sole involvement with the Dewey portfolio was to make bookkeeping entries showing the status of loans to Dewey and its partners and to provide that information and copies of relevant documents when requested to do so.  The Complaint even alleges that her "major responsibility was to receive quarterly payments from the Firm and allocate those funds to the appropriate partner accounts."  Complaint ¶ 4.  Apart from some general, conclusory allegations that impermissibly lump Ms. Martin in with others, the Complaint is devoid of *any* allegations that she did anything wrong.  Defense counsel has repeatedly explained this to Plaintiff's counsel and asked that Plaintiff rethink her pursuit of Ms. Martin.  But Plaintiff, a high-powered litigator at a major Washington law firm, insists on tarring Sally Martin's good name in the apparent belief that doing so will somehow put pressure on Barclays.

To the extent that they consist of anything other than bare conclusions, Plaintiff's allegations of wrongdoing rest entirely on a timeline that defies common sense and an interpretation of her loan documents (governed by English law) that has already been rejected *as a matter of law* by an English court in denying the identical claim when it was advanced by one of Plaintiff's former partners.  Moreover, Plaintiff's RICO claims are statutorily barred; all of her claims are time-barred; and all are deficient in numerous other respects.

It is an unfortunate fact that, when businesses—be they law firms or dry cleaners—fail, those who invested in or did business with them lose money.  Defendants wish that neither Plaintiff and her partners, nor the lenders like Barclays and other third parties, had been harmed by Dewey's collapse.  But while Defendants can understand Plaintiff's desire to blame someone, that desire does not justify her insistence on bringing this baseless lawsuit.

This Court should dismiss this lawsuit in its entirety and with prejudice.

## PLAINTIFF'S ALLEGATIONS

Without accepting their accuracy other than for purposes of this motion, the moving Defendants summarize what they understand Plaintiff's allegations to be:

Plaintiff is an experienced litigator who worked at the Dewey firm and one of its predecessors for 21 years, rising to equity partnership before leaving for greener pastures in 2010.  Complaint ¶ 1.  Like many firms, Dewey funded its operations with direct loans (from banks and through a bond issue) and with capital contributed by its partners.  *See, e.g., id.* ¶ 25.  For the convenience of its partners, Dewey had arrangements with multiple banks through which individual partners, like Plaintiff, could borrow to fund their capital contributions.  *Id.*

Barclays Bank directly loaned Dewey $5 million in 2007, *see id.* ¶ 22, and another $30 million in 2008, *see id.* ¶ 34, and also offered Dewey partners personal loans to permit them to fund their capital accounts, *see, e.g., id.* ¶ 11.  The individual defendants were those Barclays

employees involved with the Dewey portfolio: Mr. Johnman and Mr. Worsley were Relationship Directors on the Dewey account and Ms. Martin was a London-based bookkeeper "whose major responsibility was to receive quarterly payments from the Firm and allocate those funds to the appropriate partner accounts." *Id.* ¶¶ 3-5. The Complaint otherwise contains no details regarding any action allegedly taken by any of the individual defendants.

Plaintiff contends that, beginning in 2007—five years before Dewey's bankruptcy and when Barclays had direct exposure to the Dewey firm of just $5 million—defendants somehow learned that the Dewey firm was in financial distress, became concerned about the bank's exposure to the firm's credit, and conspired with its management to conceal the firm's problems from its partners and other potential sources of funding. *Id.* at pp. 1-2. Supposedly, Defendants' objective was to shift its credit risk from the Dewey firm to its partners by (a) keeping the partners in the dark about the finances of their own law firm while (b) convincing them to take out individual capital loans from Barclays, which (c) could then be used by the firm to repay its direct debt to Barclays. *Id.* at p. 3. The Complaint does not explain why, if Barclays was concerned enough about Dewey to enter into such a scheme in 2007 when the Firm owed it only $5 million, it would irrationally lend Dewey $30 million more in 2008. *See, e.g., id.* ¶ 34.

For the most part, the Complaint offers only conclusory, non-specific allegations concerning the mechanism by which Defendants supposedly carried out this scheme. Plaintiff conclusorily asserts that Defendants knew, but did not disclose to the firm partners, that management was misleading them about the Firm's finances because "Barclays was privy to a significant amount of information about the Firm" and was therefore better informed about the firm's finances than the partners who owned it. *Id.* at p. 2. Given that Defendants are not alleged to have had (nor did they, in fact, have) *any* contact with Plaintiff it is not clear how

Defendants were supposed to know that Plaintiff—who had an absolute statutory right to inspect the books and records of her partnership[2]—did not exercise that right.  The Complaint does not explain, but rather simply asserts that "Barclays had to know that the non-management partners, including Plaintiff, were acting on deceitful and erroneous information at all times herein regarding the Firm's finances…."  *Id.* at p. 4.

Plaintiff's main—and only specific—allegation is that Defendants (with whom she had no contact) did not disclose to her when she took out her loans that "(a) the Firm was already in default under several of its Barclays partner capital loans, and (b) by entering into the Barclays capital loans, the partners would themselves be automatically and immediately in default to Barclays, due to the cross-default provisions in Barclays loan documentation."  *Id.* at p. 2 and *passim*.  But as shown below in Section II(B), this allegation, which pervades Plaintiff's Complaint and is the lynchpin of each of her claims, hinges on a misreading of the contract language that was rejected *as a matter of law* by an English court when it was advanced by one of Plaintiff's former partners in another case.

Plaintiff claims that, in her ignorance and before she left Dewey in April 2010, she: (a) took out loans from Barclays to fund her capital account and (b) agreed to defer receipt of $850,000 in due and owing compensation from prior years.  *Id.* at p. 2.  *See also* Shaw Decl. Ex.

---

[2] New York Partnership Law § 41 ("The partnership books shall be kept, subject to any agreement between the partners, at the principal place of business of the partnership, and every partner shall at all times have access to and may inspect and copy any of them.").  New York law governed the operations of the Dewey partnership because Dewey was a "registered limited liability partnership under the Partnership Law of the State of New York."  Shaw Decl. Ex. 1 (Dewey Partnership Agreement) at § 1.6 .  *See, e.g., City of Harper Woods Employees' Ret. Sys. v. Olver*, 589 F. 3d 1292, 1298 (D.C. Cir. 2009) ("When a claim addresses matters of corporate governance or other internal affairs of a company, D.C. courts apply the law of the state of incorporation."). The Dewey Partnership Agreement is appropriately considered on this motion. Plaintiff has incorporated it by reference into her pleadings.  *See* Complaint ¶ 14.

2 ("Loan Agreement").  In May 2012, the firm declared bankruptcy.  Complaint at p. 3.  Plaintiff

lost the unreturned portion of her capital account (which was to be used over time to repay her

Barclays loans), had to repay the unpaid portion of her Barclays loans, and did not receive the

deferred compensation she had agreed in 2010 to accept.

## ARGUMENT

Of the Complaint's ten counts, Count I—participation in a RICO violation—names only

the individual defendants, while the other nine — *respondeat superior* under RICO; deriving

income from RICO; conspiracy to commit RICO violations; fraud; criminal conspiracy; aiding

and abetting; negligence; breach of fiduciary duty; and declaratory judgment—name only

Barclays.  All are deficient and should be dismissed.

## I.   LEGAL STANDARD

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) where it does not contain

"sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).  Making this determination is a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  A plaintiff

must plead more than a "formulaic recitation of the elements of a cause of action," *Twombly*, 550

U.S. at 555, and assert "factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678.  Although a court

should assume the truth of factual allegations that are "well-pleaded," it should not accept as true

any "legal conclusion couched as a factual allegation." *Id.* at 678-79.  Accordingly, "a court

considering a motion to dismiss can choose to begin by identifying pleadings that, because they

are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  "A

complaint should contain enough factual heft to show an entitlement to relief." *Rouse v. Berry*,

680 F. Supp. 2d 233, 236 (D.D.C. 2010).  "Although detailed factual allegations are not

necessary to withstand a Rule 12(b)(6) motion to dismiss, this pleading standard demands more

than an unadorned, the defendant-unlawfully-harmed-me-accusation.'" *Plummer v. Safeway,*

*Inc.*, 934 F. Supp. 2d 191, 195 (D.D.C. 2013) (Bates, J) (citation and internal quotation marks

omitted).   "A plaintiff cannot survive a motion to dismiss based only on an aspiration that facts

supporting a cause of action could surface in discovery."  *Palmer v. GMAC Commercial*

*Mortgage*, 628 F. Supp. 2d 186, 192 (D.D.C. 2009).

When considering a Rule 12(b)(6) motion, a court can consider documents "incorporated

by reference in the complaint" and may "take judicial notice of public records from other

proceedings."  *Sibley v. Breyer*, 456 F. Supp. 2d 43, 45 (D.D.C. 2006) (citation and internal

quotation marks omitted).  No formal words of incorporation are required; the Court may

consider the document if the plaintiff has relied on it.  *See, e.g., Redmon v. United States Capitol*

*Police*, 2015 WL 682404, at *6 (D.D.C. Feb. 18, 2015) ("The Court may consider this doctor's

letter without converting the motion to one for summary judgment, as Redmon clearly relied on

it in the Complaint and its authenticity is not disputed.").   "[W]here a conclusory allegation in

the complaint is contradicted by a document attached to the complaint, the document controls

and the allegation is not accepted as true."  *Id.* (citation and internal quotation marks omitted).

Where fraud claims are asserted, the complaint must satisfy the heightened pleading

requirements of Fed. R. Civ. P. 9(b).  Fed. R. Civ. P. 9(b) ("a party must state with particularity

the circumstances constituting fraud or mistake"); *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C.

1977) ("Fraud is never presumed and must be particularly pleaded.").  *See also Ihebereme v.*

*Capital One, N.A.*, 933 F. Supp. 2d 86, 106 (D.C. Cir. 2014) ("A plaintiff claiming fraud must

allege specific facts lending themselves to an inference of fraud under both D.C. and federal

pleading standards."). "In this Circuit, the circumstances that the claimant must plead with particularity include matters such as the 'time, place, and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud,' as well as the 'identi[ty] [of the] individuals allegedly involved in the fraud.'" *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 136-37 (D.D.C. 2013) *appeal dismissed,* No. 13-7065, 2013 WL 3357830 (D.C. Cir. June 13, 2013)) (citation omitted).[3]

"Fraud claims alleging omissions rather than affirmative misstatements also must meet the standard of Rule 9(b)." *Hite v. Leeds Weld Equity Partners, IV, LP*, 429 F. Supp. 2d 110, 115 (D.D.C. 2006). "Rule 9(b) requires the plaintiff to plead, among other things, who omitted the facts, what facts were omitted, why the omission was misleading, and when the disclosure should have been made." *Jefferson v. Collins*, 905 F. Supp. 2d 269, 289-90 (D.D.C. 2012).[4]

## II.  THE COMPLAINT CONTRADICTS PLAINTIFF'S OWN THEORY AND HINGES ON A READING OF THE LOAN DOCUMENTS THAT HAS ALREADY BEEN REJECTED AS A MATTER OF LAW BY AN ENGLISH COURT APPLYING CONTRACTUALLY CHOSEN ENGLISH LAW.

### A.  The Complaint flatly contradicts Plaintiff's own story.

The Complaint's core allegation is that Barclays learned that the Firm was in trouble and conspired to reduce its direct exposure to the firm's credit by shifting liability to the individual

---

[3] *See also Plummer*, 934 F. Supp. 2d at 198 (Bates, J.) (dismissing a fraud complaint because the plaintiff alleged "no facts whatsoever to suggest" that the defendant defrauded him); *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 96-97 (D.D.C. 2010) (dismissing fraud complaint because the plaintiffs did not "identify with specificity the defendants responsible for" the alleged fraud, offered "virtually no facts pertaining to any alleged fraudulent misrepresentations," and alleged an "open-ended time span"); *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D.D.C. 2004) (citations omitted) ("Rule 9(b) requires that the pleader provide the 'who, what, when, where, and how' with respect to the circumstances of the fraud.").

[4] *See also Cadet v. Draper & Goldberg, PLLC*, No. CIV.A. 05-2105 (JDB), 2007 WL 2893418, at *5 (D.D.C. Sept. 28, 2007)("[P]laintiffs' fraud claim revolves around *nondisclosure* rather than affirmative misrepresentation, and as such, plaintiffs must necessarily allege when and what they believe *should* have been disclosed by the defendants.") (emphasis in original).

partners through capital loans that would be used to repay the direct loans to the Firm.

Complaint at p. 3.  But that story cannot be squared with the Complaint's own timeline.  The

Complaint repeatedly states that the Bank became part of the Firm's fraudulent scheme *in 2007*,

when its direct exposure to the firm's credit was $5 million.[5]  Yet, Plaintiff alleges that *in 2008*

the Bank loaned the Firm itself an additional $30 million.  *Id.* ¶ 34.  No bank, concerned enough

about a $5 million exposure that it would hatch a byzantine plot to eliminate it, would in the

midst of that plot increase its credit exposure seven-fold.  *See, e.g., Belanger v. BAC Home*

*Loans Servicing*, 839 F. Supp. 2d 873, 878 (W.D. Tex. 2011) ("'it defies common sense to

believe that a [lender] would profit from loaning money to someone it knows cannot repay it'"),

*quoting Azar v. Nat'l City Bank*, 382 Fed. Appx. 880, 885 (11th Cir. 2010).  Plaintiff's Complaint

thus flatly contradicts its own central thesis and should be dismissed as implausible.[6]

Moreover, in an unsuccessful effort to dissuade Plaintiff from pursuing this frivolous suit,

we provided copies of contemporaneous documents showing that the Bank offered to lend $20

---

[5] *See* Complaint at p. 1 ("*Starting in 2007* and continuing through 2012, Barclays insiders at
the Firm formed an association-in-fact with Management and the EC which operated as a
criminal enterprise…"); ¶¶ 22 ("In August 2007. . . Barclays extended an unsecured $5,000,000
term loan to D&L"), 48 ("*From 2007* to 2010…Barclays was entitled to and did receive financial
information regarding the Firm, which it knew was false and misleading."); 89 ("[T]he Firm was
able to operate and fraudulently portray itself as a viable and stable business during the four and
a half year period *from 2007* to mid-2012, *due in large part to Barclays' encouraging
statements*…"), 98 ("*By 2007*, Barclays knew that the Firm was not able to meet its obligations
under the capital loan program."), 99 ("*In late 2007* and early 2008, management developed a
scheme, *with the knowledge of Barclays…to inject capital into the Firm and keep the Firm
viable*.") (all emphasis added).

[6] *See, e.g., Oceanic Exploration Co. v. Phillips Petroleum Co. ZOC*, 352 F. App'x 945, 952
(5th Cir. 2009) (dismissing a RICO case because the "allegations fail the test of common sense
plausibility when considered together with other allegations in the Complaint"); *Jackson v.
Chavez*, No. A-11-CA-417-LY, 2013 WL 3328683, at *13 (W.D. Tex. June 26, 2013) ("As *Iqbal*
mandates, allegations lacking common sense are subject to dismissal."); *Whittington v. United
States*, 867 F. Supp. 2d 102, 106 (D.D.C. 2012) ("Because plaintiff has directly contradicted
certain of his claims with his factual allegations, those claims must be dismissed.").

million *to the Firm* in April *2010*—three years into the supposed plot and at the moment when the Bank's exposure to the Firm's credit was about to be entirely eliminated (that is, when the alleged plot was about to accomplish its objective). *See* Exhibit 3 to the Shaw Declaration. Plaintiff therefore asks the Court to accept that not only did the Bank irrationally increase its direct exposure to the Firm's credit seven-fold in the midst of a supposed plot to eliminate that exposure entirely, but also that on the eve of its culmination the Bank would frustrate that plot by offering to lend the Firm $20 million.[7]

### B. Plaintiff's reading of the Loan Agreement is wrong as a matter of law.

Pervading the Complaint is the allegation that, before Plaintiff took out her loan, the Firm had already defaulted on its obligations to the Bank by failing to repay previously departed partners' capital loans when due. The Complaint asserts that Barclays not only was aware of these supposed defaults but also hid them from Dewey partners who borrowed from the Bank. *See, e.g.*, Complaint at pp. 1-4 ("Nature of Action"); ¶¶ 16-19, 31-33. That these defaults existed and should have been disclosed is the express premise of each of Plaintiff's claims,[8] but it is wrong as a matter of law. Not only is the interpretation of the loan documents that Plaintiff advances refuted by their unambiguous language, but also, when another former Dewey partner recently raised the identical argument, it was expressly rejected *as a matter of law* by an English court applying contractually selected English law.[9] This Court should adopt the English court's

---

[7] Pursuant to Federal Rule of Civil Procedure 12(d), the Court can convert this to a summary judgment motion and hold that, on this evidence, no reasonable jury could find for Plaintiff.

[8] *See, e.g.*, Nature of the Action and ¶¶ 16-19, 31-33, 45, 47, 49, 50, 53, 61-65, 69-70, 73-74, 76, 80, 94, 101-102, 104, 106-108, 111, 116, 118, 120, 123, 127, 131-132, 136, 142, 144, 147, 160-161, 164-165, 167-168, 171, 175.

[9] The Dewey partner loan agreement at issue in that case is identical to Plaintiff's and likewise contains a choice of law provision stating that the contracts "shall be governed by and construed in accordance with the laws of England." *See, e.g.*, Shaw Decl. Ex. 2 at § 11.1. Under

English-law interpretation of the parties' contract and hold that Plaintiff's claim fails as a matter of law.

In late 2012, Barclays sued L. Londell McMillan, a former Dewey partner, to collect on his partnership loan in London.  Shaw Decl. Ex. 4 ("English Op.").  Among other things, Mr. McMillan raised precisely the same argument that Plaintiff now raises, contending that, when he borrowed from Barclays, Dewey was in default due to a failure to repay previously departed partners' capital as supposedly required by the Partnership Undertaking, a loan document prescribing Dewey's obligations to Barclays.  *Id*. ¶¶ 17(6), 21, 23(d), 79(1).

On June 9, 2015, the English court—applying English law and interpreting an identical agreement—held that Mr. McMillan's interpretation of the contract was incorrect "as a matter of fact *and law*," *id*. at ¶ 71(6) (emphasis added),  because Dewey had no obligation to repay loans taken out by departed partners:

> The legal basis for the argument is unsound because it assumes that paragraph (ii)(b) of the undertaking imposes an obligation on the Firm to pay a sum to the Bank as an immediately enforceable debt, whereas the undertaking is negative in form, being merely not to pay the balance of the capital account to the partner in preference to the Bank.  If there is no payment to the partner there is no breach of obligation to the Bank.

*Id*. ¶ 71(6)(b). *See also id*. ¶¶ 75 ("there was no implied representation that there were no unremedied events of default. . . . In any event there was no unremedied event of default as alleged for the reasons I have explained"); 80(1) ("As to an existing event of default, this is the

---

D.C. choice-of-law principles, "parties to a contract may specify the law they wish to govern, as part of their freedom to contract, as long as there is some reasonable relationship with the state specified." *Aneke v. Am. Exp. Travel Related Servs.*, Inc., 841 F. Supp. 2d 368, 375 (D.D.C. 2012) (citation and internal quotation marks omitted).  This reasonable relationship "exists where one of the parties to the contract is based in the specified state." *Id.*  Here, the English choice of law provision governs Sandza's claim that Dewey was in default under the loan agreements because the "reasonable relationship" requirement is satisfied as Barclays is an English bank.

clause 10.1(j) argument which I have rejected for the reasons given."); and 86 ("As to the suggestion that the Bank should have advised Mr. McMillan that at the time of signing the Loan Agreement there was an unremedied event of default in existence under clause 10.1(j), there was no such event of default for the reasons I have explained.").

The English court's opinion establishes that Dewey was not in default under the loan agreements for failing to repay departed partners' capital because Dewey had no such obligation to Barclays.  Rather, Dewey had only the *negative* obligation not to return a departed partner's capital before Barclays was repaid.  Thus, the basic premise of Plaintiff's default claim is mistaken as a matter of law and the English court's opinion is fatal to each of her claims.

The question was not a difficult one for the English court, since the contract's plain language precludes the reading urged by Plaintiff (and, before her, by Mr. McMillan).  Tellingly, rather than attaching or quoting the loan documents, the Plaintiff's Complaint merely offers a legal conclusion[10]—not binding on this Court—regarding its meaning.

Here, the key provision appears in the Undertaking, which sets forth the Firm's obligations to Barclays.  Specifically, the Undertaking provides in pertinent part:

> We confirm that on receipt of any amount provided by Barclays Bank PLC (the "Bank") to the Partner by means of a partnership capital subscription (each a "Loan") pursuant to a partnership capital subscription loan facility letter from the Bank to the Partner (the "Facility Letter"), such amount will be placed to the credit of the Partner's partnership capital account (the "Capital Account") in the Firm's books.
>
> …..

---

[10] *See, e.g., Slinski v. Bank of Am., N.A.*, 981 F. Supp. 2d 19, 29 (D.D.C. 2013) ("'[T]he interpretation of a contract provision is a question of law and not of fact,' and therefore, so long as the terms of that provision are 'reasonably clear,' its construction is 'a problem for the court, not the jury.'") (citations omitted).

In connection with each Loan:

.....

> ii. provided that the Instruction Letter remains in force, we irrevocably undertake that upon the earliest of: (a) the Partner ceasing to be a Partner in the firm, (b) the occurrence of any event of default under the Facility Letter, and (c) the making or docketing of judgment in England or New York against the Partner in respect of amounts due under the Facility Letter, we will apply the balance of the Partner's Capital Account in satisfying (so far as is possible) any indebtedness remaining outstanding under the Loan with the Bank, before paying any residue to the Partner or to the Partner's legal personal representatives; ......

A true and correct copy of Plaintiff's loan documentation is attached as Exhibit 2 to the Shaw Declaration.

In Mr. McMillan's case, the English court carefully analyzed that language, in the context of the loan documentation as a whole, before rejecting as a matter of law the claim that Dewey, itself, had any obligation to Barclays to repay departed partners' capital:

> The contractual documents make clear that it is Mr McMillan who is the borrower, that it is he who is personally liable for repayment of the loan when due, and that the Bank's recourse against the Firm is by way of collateral for that obligation, effected by what is in law an assignment by Mr McMillan to the Bank of his right against the Firm to repayment of his capital contribution.  This follows from the clear wording . . . .

English Op. ¶ 68.  The English court then identified 14 provisions of the loan documents that support this reading.  *Id.* ¶¶ 68-69.  Since the contractual documents at issue here are identical, each of those provisions is also in the contract that Plaintiff signed.

In short, the issue presented here is identical to the issue presented to—and resolved *as a matter of law* by—the English court.  We respectfully submit that this Court should consider the English court's ruling on the issue to be the clearest possible indication of what English law is on

12

the issue and should adopt the English court's holding pursuant to FRCP 44.1.[11]

### III.   PLAINTIFF'S RICO CLAIMS ARE BARRED BY THE PRIVATE SECURITIES LITIGATION REFORM ACT'S RICO BAR.

Each of Plaintiff's RICO claims is statutorily barred by the Private Securities Litigation Reform Act's RICO bar. PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995, PL 104–67 (December 22, 1995) ("PSLRA"). Before the PSLRA, "a private plaintiff could assert a civil RICO claim for securities law violations sounding in 'garden variety' fraud." *Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999) (citation omitted). As a result, "plaintiffs regularly elevated fraud to RICO violations because RICO offered the potential bonanza of recovering treble damages." *Id.* To stop this widespread abuse of the RICO cause of action, Section 107 of the PSLRA amended 18 U.S.C. § 1964(c) to provide that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a [RICO violation]." *See* Pub. L. No. 104-67, § 107 (1995). Thus, as amended, § 1964(c) bars RICO claims based on alleged fraud "'*in connection with* the purchase or sale' of securities." *Bald Eagle*, 189 F.3d at 327 (emphasis in original) (citation omitted). Congress intended not simply "to eliminate securities fraud as a predicate offense in a civil RICO action," but also to prevent a plaintiff from "plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." H.R. Rep. No. 104-369, at 47 (1995).

The inquiry focuses on the *conduct* at issue in the RICO claim. *See Bald Eagle*, 189 F.3d

---

[11] In pertinent part, Rule 44.1 provides: "In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law."

at 330 ("[T]he proper focus of the analysis is on whether the conduct pled as predicate offenses is "actionable" as securities fraud...").  "To prevent circumvention of congressional intent, courts have interpreted the PSLRA amendment broadly."  *Eagletech Communications, Inc. v. Citigroup, Inc.*, Case No. 07-60668, 2008 WL 3166533, at *9 (S.D. Fla., June 27, 2008) (citations omitted).  As such, a plaintiff cannot parse claims in an effort to cherry-pick those that would be barred under the PSLRA and those that would not.  *Bald Eagle*, 189 F.3d at 330 ("Allowing such surgical presentation of the cause of action here would undermine the congressional intent behind the RICO Amendment.").  The PSLRA bar preempts a RICO claim if it shares a nucleus of fact with a securities claim, regardless of whether *all* of the predicate acts would be actionable under securities law.[12]  The question is whether *any* of the predicate acts played a part in the alleged scheme that implicates securities law.[13]  It also is irrelevant whether the Complaint's allegations are *directly* related to the purchase or sale of securities.[14]

_____

[12] *See Ling v. Deutsche Bank*, 95 A.F.T.R.2d 2005-2585, 2005 WL 1244689, at *4 (S.D.N.Y. May 26, 2005) ("[I]f any predicate act is barred by the PSLRA it is fatal to the entire RICO claim."); *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 935 F.Supp.2d 666, 731 (S.D.N.Y. 2013)  ("because *some* of the alleged predicate acts could have been grounds at least for a securities fraud action brought by the SEC, plaintiffs' RICO claim, in its entirety, is barred by the PSLRA.") (emphasis added); *Sell v. Zions First Nation Bank*, No. CV 05 0684 PHX SRB, 2006 WL 322469, at *11 (D. Ariz. Feb. 9, 2006) (barring a RICO Complaint under the PSLRA because allegations of bank fraud and conspiracy "are but tentacles of the same octopus, sufficiently connected to securities fraud to bar their use as predicate acts").

[13] *See, e.g., Licht v. Watson*, 567 F. App'x 689, 693 (11th Cir. 2014) ("Although Licht alleges that the defendants also engaged in wire fraud and mail fraud, this conduct was in furtherance of the defendants' overarching scheme to commit securities fraud."); *Capital Inv. Funding, LLC v. Field*, Fed. Sec. L. Rep. P 98350, 2015 WL 247720, at *2 (D.S.C. Jan. 20, 2015) (barring RICO claims because its "predicate acts were, by the Complaint's own language, so expressly necessary to the overall fraudulent scheme"); *In re LIBOR*, 935 F.Supp.2d at 731 (dismissing a RICO claim where some of the predicate acts might not have been actionable as securities fraud because the Complaint alleged that the defendants formed an association-in-fact enterprise with a common purpose whose "conduct constituted a single fraudulent scheme").

[14] *See Capital Inv. Funding,* 2015 WL 247720, at *2 (holding that the PSLRA bar applies even though the suit did not involve the direct purchase or sale of securities because but for the

The predicate acts Plaintiff alleges here would be actionable as securities fraud.  The gist of the alleged RICO conspiracy is that Firm management and Defendants launched a fraudulent scheme to "inject" capital into the Firm by disseminating "erroneous and misleading financial statements" and information that "misrepresented the Firm's true financial condition." Complaint ¶¶ 99-100.  As such, much of the Complaint rests on the Firm's false and misleading financial statements.  Complaint at pp. 1- 2, 4; ¶¶ 36, 39, 48, 64(a), 68 – 69, 71, 100, 123(c), 162. Plaintiff alleges that the goal of these statements was to "perpetuate the view that the Firm was a viable entity," *id.* ¶ 87, and a "financially viable and stable organization in which [partners] could invest with confidence[,]" *id.* ¶ 72(c).  *See also id.* at p. 3 ("financially viable"); ¶¶ 41 ("financially vibrant"), 89 ("fraudulently portray itself as a viable and stable business…"), 112(a) ("the appearance of profitability and financial success…").

Critically, Plaintiff explicitly alleges that a goal of the overall scheme was to facilitate a $150 million bond offering.  *Id.* ¶ 112(c).  That allegation is fatal to Plaintiff's RICO claims as it establishes that her claim is based on a scheme between the Firm and the Bank to inflate the perceived value of the Firm via fraudulent financial statements *in order to effectuate a securities transaction*.  *See* 15 U.S.C.A. § 80b-2 (defining security to include any bond).

There would be no question that that alleged scheme would be actionable as securities fraud even if the SEC had not already filed a securities fraud complaint against various members of the Firm's management, in which it asserts that the 2008 and 2009 financial statements were fraudulent and used in a scheme to commit securities fraud in connection with the law firm's

---

raising of money via an alleged fraudulent scheme, a sale of securities would not have occurred); *Hollinger Int'l, Inc. v. Hollinger Inc.*, Case No. 04-C-0698, 2004 WL 2278545, at *5, *10 (N.D. Ill., Oct 8, 2004) (holding RICO claims barred under PSLRA, although "none of the allegations in the Complaint directly related to the purchase or sale of securities.").

2010 bond issue.  *S.E.C. v. Davis et al*, 14-cv-01528 (S.D.N.Y. Mar. 6, 2014).[15]  That the SEC

*did* file that action is dispositive; courts routinely find the existence of such lawsuits asserting

securities fraud claims to be conclusive proof that a RICO claim is barred by the PSLRA.  *See,*

*e.g., Bald Eagle*, 189 F.3d at 328 (holding RICO claim barred where SEC brought securities

fraud claims); *In re Ikon Office Solutions*, 86 F. Supp. 2d. 481, 487 (E.D. Pa. 2000) (holding

state court securities fraud complaint "clearly demonstrated" that alleged financial improprieties

were actionable as securities fraud).

　　　　Because the focus is on the conduct at issue, not on the parties involved in the various

suits, it does not matter that Plaintiff has not asserted a securities claim in her own right.  The

PSLRA's statutory language makes this clear: "*no person may rely upon conduct* that would

have been actionable as fraud in the purchase or sale of securities to establish a [RICO

violation]."  PSLRA.  And the federal courts have unanimously so held: five courts of appeal

(and many district courts) have held that the bar applies regardless of whether the plaintiff

brings—or even could bring—a securities fraud claim.[16]  Likewise, it is irrelevant that the

---

[15] Again, this Court may take judicial notice of the SEC's complaint, *see* p. 6  above, a copy of which is attached as Ex. 5 to the Shaw Declaration.

[16] *See Licht*, 567 F. App'x at 693 (explaining that courts apply the bar "broadly, regardless of whether the plaintiff explicitly relied upon securities fraud as a predicate act or even had standing to pursue a securities fraud claim"); *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 280 (2d Cir. 2011) ("when Congress stated that 'no person' could bring a civil RICO action alleging conduct that would have been actionable as securities fraud, it meant just that. It did not mean 'no person except one who has no other actionable securities fraud claim.'") (quoting *Hemispherx Biopharma, Inc. v. Asensio*, 1999 WL 144109, at *4 (E.D. Pa. Mar. 15, 1999)); *Affco Investments 2001, L.L.C. v. Proskauer Rose, L.L.P.*, 625 F.3d 185, 195 (5th Cir. 2010) (affirming a district court's decision to bar a RICO claim even though the plaintiffs could not bring a securities claim under 10(b)); *Bixler v. Foster*, 596 F.3d 751, 760 (10th Cir. 2010) (holding a RICO claim barred even though most of their alleged predicate acts would not be actionable as securities fraud); *Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) (holding that, despite the plaintiff's lack of securities standing, the RICO bar applied because a securities claim "could be brought by a plaintiff with proper standing").

defendants in this case are not appropriate securities fraud defendants.[17]

Because the conduct that forms the basis of Plaintiff's RICO claim is the same conduct that would be (and has been) actionable as securities fraud, all of her RICO claims are barred by the PSLRA.

## IV.   PLAINTIFF'S CLAIMS ARE TIME-BARRED.

Plaintiff's claims all depend on her assertion that, before her 2010 withdrawal from the Dewey partnership, Complaint ¶ 46, she had made "damaging personal decisions" based upon "false and misleading statements and information" in agreeing (a) to make "a substantial capital contribution of $200,000 to the Firm, financed for the most part by Barclays' capital loan program" and (b) to accept "deferred compensation of $825,000, payable over a period of 11 years starting in 2011, to compensate her for having been underpaid in prior years." *Id.* at pp. 2-3; ¶¶ 1, 91-92. Thus, Plaintiff acknowledges that she suffered financial harm—undertaking obligations to Barclays and foregoing immediate payment of amounts due and owing from Dewey—not later than 2010. That acknowledgement is fatal to her claims, each of which is time-barred. Dismissal based on the statute of limitations is appropriate "when the facts that give rise to the defense are clear from the face of the complaint[,]" as they are here. *McQueen v. Woodstream Corp.*, 244 F.R.D. 26, 31 (D.D.C. 2007).

### A.   Plaintiff's RICO claims are time-barred.

---

[17] *See, e.g.*, *MLSMK*, 651 F.3d at 280 ("[W]e conclude that the PSLRA's RICO Amendment, 18 U.S.C. § 1964(c), bars a plaintiff from asserting a civil RICO claim premised upon predicate acts of securities fraud, including mail or wire fraud, even where the plaintiff could not bring a private securities law claim against the same defendant."); *Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 281-82 (S.D.N.Y. 2009) ("The language of the statute simply does not require that, for a RICO claim to be barred… the conduct 'actionable as securities fraud' on which the plaintiff relies to establish the RICO violation must be that of the defendant.").

RICO claims are subject to a four-year statute of limitations. *Rotella v. Wood*, 528 U.S. 549, 553 (2000). The clock begins to run not later than "the date the plaintiff discovered or should have discovered the injury."[18] *Brown v. Wachovia Bank*, No. CIV.A.06 0153 RMC, 2007 WL 1378491, at *4 (D.D.C. May 10, 2007) *aff'd*, No. 07-5188, 2008 WL 2516476 (D.C. Cir. Feb. 26, 2008) (citing *Rotella*, 528 U.S. at 553). In *Rotella*, the Supreme Court held a RICO claim time-barred because the plaintiff "knew of his injury when it occurred" 11 years prior to bringing suit, even though he first learned about the racketeering pattern *three* years before suing. *Rotella*, 528 U.S. at 555, 558-59. "*Rotella* makes clear that knowledge of the injury, rather than knowledge of the pattern of RICO activity, starts the clock running for statute of limitations purposes." *Hargraves v. Capital City Mortgage Corp.*, 140 F. Supp. 2d 7, 17 (D.D.C. 2000) *reconsideration granted in part on other grounds*, 147 F. Supp. 2d 1 (D.D.C. 2001). In *Hargraves*, Judge Green found the plaintiffs' RICO claim—which was based on unlawful activity that induced plaintiffs to enter into a mortgage agreement with defendant—time-barred because the loans at issue closed more than four years prior to the filing of the complaint and plaintiffs could not plausibly claim ignorance of that fact. *Id*. ("the supporting documentation cited by the plaintiffs does not suggest the plaintiffs were unaware of their injuries, but merely that they were unaware of the defendants' discrimination and racketeering. Awareness of the pattern of RICO activity is not necessary to start the statute of limitations period running.").

---

[18] The D.C. Circuit has not decided whether the statute begins to run from the injury itself or from discovery of the injury, a question that the Supreme Court left open in *Rotella*. *See Youkelsone v. F.D.I.C.*, 910 F. Supp. 2d 213, 226 n.20 (D.D.C. 2012) *aff'd*, 560 F. App'x 4 (D.C. Cir. 2014) (explaining that the D.C. Circuit "has not spoken definitively" on whether the "injury occurrence" or "injury discovery" rule applies). The distinction does not matter here because the Complaint establishes that Plaintiff necessarily knew of the injuries she complains of—her agreement to postpone receipt of due and owing compensation and her taking out a loan from Barclays—at the moments in 2009 and 2010 that she entered into those agreements.

Here, Plaintiff filed her Complaint on May 14, 2015.  She alleges—as she must—that she was injured by agreements she knowingly entered into in 2009 and 2010.  Accordingly, she cannot plausibly deny that she knew of her injuries before departing the firm on April 30, 2010—five years before she filed her Complaint.  Her RICO claims are therefore time-barred.

**B. Plaintiff's other claims are time-barred.**

"[A] federal court sitting in diversity looks to state law to determine whether a cause of action based upon state law has expired." *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995).  Because D.C. views statutes of limitations as procedural, such cases "almost always mandate application of the District's own statute of limitations." *Id.*

D.C. Code § 12-301 establishes limitations for specific actions, and also includes, via § 12-301(8), "a catch-all provision, that sets a statute of limitations of three years for those causes of action 'for which a limitation is not otherwise limited.'"  *Ling Yuan Hu v. George Washington Univ.*, 766 F. Supp. 2d 236, 241 (D.D.C. 2011) *aff'd*, No. 11-7014, 2011 WL 3241457 (D.C. Cir. July 6, 2011) (citation omitted).  Each of the non-RICO claims in Plaintiff's Complaint—fraud, criminal conspiracy, aiding and abetting, negligence, breach of fiduciary duty, and declaratory judgment—falls within this residual provision.

The statute begins to run "from the time the right to maintain the action accrues."  D.C. Code § 12-301.  "A claim normally accrues when the factual and legal prerequisites for filing suit are in place." *3M Co. (Minnesota Min. & Mfg.) v. Browner*, 17 F.3d 1453, 1460 (D.C. Cir. 1994).  *See also Kerns v. Ameriprint, Inc.,* 621 A.2d 381, 383 (D.C.1993) (explaining that as "a general rule, an action accrues and the statute of limitations begins to run when the suit could first be initiated." (citing *Toomey v. Cammack,* 345 A.2d 453, 455 (D.C.1975)).

As shown below, the statute has run on each of Plaintiff's state law claims:

### 1.   Fraud

Fraud claims are "governed by the three-year limitations period provided in D.C. Code §

12–301(8)…"  *Clouser v. Temporaries, Inc.*, 730 F. Supp. 1127, 1131 (D.D.C. 1989).  The clock

begins to run as soon as the plaintiff either discovers or reasonably should have discovered the

fraud.  *Id.* at 1131.

Here, extensive press coverage of alleged fraud and criminal wrongdoing put Plaintiff on

notice as a matter of law more than three years before she filed her Complaint on May 14, 2015.

Between April 12, 2012 and May 13, 2012, there were news reports in major publications and

legal journals about Dewey's problems that discussed its severe financial difficulties,

mismanagement, and allegations of fraudulent conduct by its leadership.[19]

For example, on April 28, 2012, an article on the *front page* of the *New York Times*

Business Section reported that the Manhattan district attorney's office was investigating the Firm

---

[19] The results of a LexisNexis search for news articles from April 12, 2012 to May 13, 2012
with the terms "misconduct OR investigation" within 10 words of "Dewey" is attached as Ex. 6
to the Shaw Declaration.  Additionally, copies of the articles discussed below, only some of
which appear in that search, are attached as Ex. 7 to the Shaw Declaration.  They are
appropriately considered here, as it is customary for district courts to take judicial notice "of the
*fact* that press coverage…contained certain information, without regard to the truth of their
contents" in order to establish that the information was "publicly available."  *Staehr v. Hartford
Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425-26 (2d Cir. 2008); *In re Bear Stearns Companies, Inc.
Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 582, (S.D.N.Y. Sept. 13, 2011) and *on
reconsideration,* 51 Employee Benefits Cas. 2832, 2011 WL 4357166 (S.D.N.Y. Sept. 13, 2011)
("… the Court takes judicial notice of the fact that these documents contain certain information,
but it does not accept these documents for the truth of the matters asserted in them"); *Washington
Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) (finding that the Court "may take judicial
notice of the existence of newspaper articles…").  This includes taking judicial notice of news
articles to establish that an action is time-barred.  *See, e.g., DeBenedictis v. Merrill Lynch & Co.*,
492 F.3d 209, 218 (3d Cir. 2007) (finding a plaintiff's case time barred in part because news
articles were sufficient to trigger inquiry notice); *Williams v. Chu*, 641 F. Supp. 2d 31, 34-35
(D.D.C. 2009) (taking judicial notice of a decision from the Equal Employment Opportunity
Commission that contained "all of the information necessary to adjudicate the merits of the
defendants' statute of limitations argument").

after a group of the Firm's partners "presented evidence to the district attorney" about "financial

impropriety."  Peter Lattman, *Prosecutors Scrutinize Ex-Head of Dewey*, N.Y. TIMES, Apr. 28,

at B1 (first appearing online on April 27, 2012 at 5:22 PM ET on the *New York Times*'

DealB%K section, *available at* http://dealbook.nytimes.com/2012/04/27/new-york-prosecutors-

examining-former-dewey-chairman/).  On the same day, Reuters reported that "prosecutors are

investigating whether Dewey leadership made misleading statements about payments due to

partners."[20]  One day earlier, *Law360* had reported that partners at the firm were urging the

district attorney to press *criminal* charges against the chairman of the firm, including wire and

mail fraud.[21]  Additional articles appeared around the same time in other prominent publications,

including *The Washington Post*, on the front page of *The Wall Street Journal*, and on the website

of *The ABA Journal*.[22]

    As a former Dewey partner with substantial financial exposure to the firm, Plaintiff

cannot plausibly claim ignorance of these prominent reports and was, therefore, on notice of her

---

[20] Karen Freifeld and Joseph Ax, *Refile- New York Prosecutors Probe Law Firm Dewey & LeBoeuf*, REUTERS (Apr. 27, 2012, 3:46 PM ET), *available at* http://www.reuters.com/article/2012/04/27/law-dewey-leboeuf-idUSL2E8FRDL920120427.

[21] Megan Leonhardt, *Dewey Partners Press DA to Bring Charges Against Firm Head*, LAW 360 (April 26, 2012, 8:53 PM) ET, *available at* http://www.law360.com/articles/334828/dewey-partners-press-da-to-bring-charges-against-firm-head.

[22] *See, e.g.,* Catherine Ho, *Patton Boggs, SNR Denton Could Pick Up Parts of Dewey & LeBoeuf*, The Washington Post (May 2, 2012) *available at* http://www.washingtonpost.com/business/capitalbusiness/patton-boggs-snr-denton-could-pick-up-parts-of-dewey-and-leboeuf/2012/05/02/gIQAKbJKwT_ story.html; Ashby Jones and Jennifer Smith, *Woes at Law Firm Deepen, Probe of Dewey & LeBoeuf Focuses Largely on Law Firm's Chairman, According to Internal Memo*, Wall St. J. (Apr. 28, 2012) at A1; Debra Cassens Weiss, *Where is Dewey's Onetime Chairman? Memo Alerts Partners to Criminal Probe*, ABA J. (Apr. 27, 2012, 6:51 PM CDT), *available at* http://www.abajournal.com/news/article/where_is_deweys_one-time_chairman/.

claims more than three years before she filed this lawsuit.[23]   Indeed, this Court may take judicial

notice that, on February 12, 2013, Plaintiff asserted in the Dewey bankruptcy that she was

defrauded into accepting deferred compensation.[24]   Therefore, her fraud claim is time-barred.

### 2.  Criminal Conspiracy

Plaintiff has not explained the legal basis for her criminal conspiracy claim and, as shown

below, D.C. does not even recognize a civil claim for criminal conspiracy.  Likewise, D.C. does

not recognize *civil* conspiracy as an independent tort; rather, "a civil conspiracy claim

incorporates not only every substantive element of the underlying tort, but also its statute of

limitations."  *Nader v. Democratic Nat. Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009); *see also*

*Curtis v. Lanier*, 535 F. Supp. 2d 89, 95 (D.D.C. 2008) ("Conspiracy does not have its own

statute of limitations under District of Columbia law.").  Thus, the statute of limitations for a

conspiracy to defraud claim is that of the underlying fraud claim.  Because Plaintiff's fraud claim

is time-barred, so too is her conspiracy claim.

### 3.  Aiding and Abetting

If a plaintiff's "underlying substantive fraud claim is time-barred by the three-year statute

of limitations, their aiding and abetting claim also is time-barred."  *Hancock v. Homeq Servicing*

*Corp.*, No. CIV.A. 05-0307PLF, 2007 WL 1238746, at *9 (D.D.C. Apr. 27, 2007) *aff'd,* 526

F.3d 785 (D.C. Cir. 2008).  As Plaintiff's fraud claim is time-barred, so too is her aiding and

---

[23] *See, e.g., United States v. Bank of Am.*, 303 F.R.D. 114, 119 (D.D.C. 2014) ("Due to the substantial and widespread publicity that the consent judgments in this case received starting in February 2012, Mr. Wray had actual or constructive notice of the Citi Consent Judgment twenty-two months before filing his motion to intervene in December 2013."); *Pomeroy v. Schlegel Corp.*, 780 F. Supp. 980, 983 (W.D.N.Y. 1991) (summarizing case law holding that "extensive press coverage combined with the other information of which plaintiff was aware, was sufficient to establish 'inquiry notice' *even though there was no evidence that the plaintiff had read the press coverage*") (emphasis in original).

[24] *See* n.2 above.  Plaintiff's bankruptcy filing is attached as Ex. 8 to the Shaw Declaration.

abetting claim.

### 4.  Negligence

There is a three-year statute of limitations for negligence claims.  *See Griggs v. Wash. Metro. Area Transit Auth.,* 232 F.3d 917, 919 (D.C.Cir.2000).  "It is well established in this jurisdiction that 'In ordinary negligence actions, a cause of action accrues for statute of limitations purposes at the time the injury actually occurs.'"  *Jackson v. Am. Red Cross*, No. CIV. A. 91-2465(JHG), 1992 WL 172566, at *2 (D.D.C. June 30, 1992) (citation omitted).  As shown above, Plaintiff's Complaint discloses that her alleged injuries occurred more than three years before she sued.  Therefore, her negligence claim is time barred.

### 5.  Breach of Fiduciary Duty

This Court has explained that "a claim of breach of fiduciary duty must be brought within three years of when the plaintiff knows or through the exercise of due diligence should have known" of the breach.  *Ling Yuan Hu*, 766 F. Supp. 2d at 243.  As shown above, the Complaint establishes that Plaintiff knew of her injuries and had at least inquiry notice about purported fraud more than three years before suing.  Her fiduciary breach claim is therefore time-barred.

### 6.  Request For Declaratory Judgment

A declaratory judgment action sounds in equity.  *See Crawford v. D.C.*, 891 A.2d 216, 219 n.7 (D.C. 2006); *McIntosh v. Washington*, 395 A.2d 744, 748 (D.C. 1978).  "[E]quity will withhold its relief in such a case where the applicable statute of limitations would bar the concurrent legal remedy."  *Cope v. Anderson*, 331 U.S. 461, 464 (1947).  Thus, if a plaintiff requests a "District Court to exercise its legal and equitable jurisdiction concurrently in the present case, the District of Columbia statute of limitations operates to bar her claims for both legal and equitable relief." *Dupree v. Jefferson*, 666 F.2d 606, 611 n.43 (D.C. Cir. 1981).

Because Plaintiff has asked this court for both legal and equitable relief and because her legal claims are time-barred, her request for equitable relief likewise comes too late.

## V.   THE COMPLAINT IS DEFICIENT IN NUMEROUS OTHER RESPECTS.

### A. Plaintiff's RICO claims are legally deficient.

#### 1.   Plaintiff has failed to plead essential elements of a RICO claim under 18 U.S.C. § 1962(c).

A RICO claim cannot stand if the "complaint's broad and vague assertions simply recite legal conclusions and regurgitate the RICO elements without directing the Court to specific facts." *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 119 (D.D.C. 2005) (Bates, J.).  A complaint is deficient if it neither enables the Court "to identify the contours and substance of the RICO claims," nor provides "defendants proper notice of the allegations against them." *Id.* at n.12.  A plaintiff must provide specific facts to support each of the elements of a § 1962(c) RICO claim: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1127 (D.C. Cir. 2015).

Here, Plaintiff's Complaint contains no specific factual allegations—none—concerning any statement or action by any of the Defendants and therefore fails to state any of the essential RICO elements.  Plaintiffs' *respondeat superior* claim also fails for the same reasons.  *See Ago v. Begg, Inc.*, RICO Bus. Disp. Guide 6881, 1988 WL 75224, at *5 (D.D.C. Feb. 24, 1988) (given plaintiffs' failure to support its RICO allegations, "the Court need not address defendants' arguments regarding the viability of the *respondeat superior* doctrine under RICO").

Plaintiff's RICO claim suffers from at least the following fatal deficiencies:

#### i.   The Complaint does not adequately plead that the individual defendants participated in the alleged scheme.

Satisfying the conduct element of a § 1962(c) claim requires a plaintiff to plead specific facts showing that a defendant played "*some* part in directing the enterprise's affairs" by virtue

of participating "in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 179, 183 (1993) (emphasis in original).  This requirement is not met absent *specific facts* showing that the defendants were in "cahoots" with those who committed fraud or that they "proffered advice" or "assumed any directive role" in the fraud.[25]  Here, the Complaint provides no facts—none—showing that any defendant in any way directed the alleged enterprise.

### ii.    *The Complaint does not adequately plead the existence of an enterprise.*

The "existence of an enterprise must be shown through facts that allege (1) a common purpose among the participants, (2) organization, and (3) continuity." *Doe I*, 400 F. Supp. 2d at 119.  It is not sufficient to plead that a group has come together to engage in racketeering activity.  Rather, a "plaintiff must assert that those individuals were organized together in some way, and that there was a structure to the association." *Id.  See also Watson v. Norris*, No. CIV. A. 89-0625(CRR), 1991 WL 7165, at *2 (D.D.C. Jan. 11, 1991) (explaining that an association-in-fact must be "an entity *separate and apart* from the pattern of [racketeering] activity in which it engages") (emphasis in original; citation omitted).  In *Doe I*, this Court found a complaint did not sufficiently plead the enterprise element because it failed to show any "common orders or control" or to explain "how the several groups of defendants associated or operated together, or were otherwise organized into an enterprise with a shared decision-making infrastructure." *Doe I*, 400 F. Supp. 2d at 119-20.  *See also Dodd v. Infinity Travel*, 90 F. Supp. 2d 115, 117 (D.D.C.

---

[25] *Grant Thornton, LLP v. Office of Comptroller of the Currency*, 514 F.3d 1328, 1333 (D.C. Cir. 2008).  *See also Jones v. Meridian Towers Apartments, Inc.*, 816 F. Supp. 762, 772 (D.D.C. 1993) (finding the defendants' conduct did not meet the requirements of § 1962(c) even though they may have committed at least one of the racketeering acts); *Harpole Architects, P.C. v. Barlow*, 668 F. Supp. 68, 75 (D.D.C. 2009) (dismissing a complaint that did not provide any facts establishing that a bookkeeper who had a "great deal of responsibility to ensure the financial matters were properly accounted for" actually played a role in directing the affairs of the enterprise) (citation omitted).

2000) ("[T]heir failure to plead facts identifying the common purpose and organizational and decisionmaking structure of the alleged enterprise is fatal to their claim.").

Aside from conclusorily alleging that the Bank's "insiders at the Firm" and the Firm's managers formed an "association-in-fact," Complaint at pp. 1, 4; ¶¶ 7(c), 59 - 60, 63, Plaintiff pleads no facts supporting the existence of a common purpose or a decisionmaking structure. That is insufficient.

### iii.   The Complaint fails to allege predicate acts of racketeering activity with the requisite particularity.

To plead mail and wire fraud as predicate acts, a complaint must show that there was "(1) a scheme to defraud; and (2) use of the mails or wires for the purpose of executing the scheme." *Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69, 89 (D.D.C. 2006) (citation and internal quotation marks omitted) ("It is well-settled in this and other Circuits that '[w]here acts of mail and wire fraud constitute the alleged predicate racketeering [activity], these acts are subject to the heightened pleading requirement of [Federal Rule of Civil Procedure] 9(b).'")[26]

To sufficiently plead mail and wire fraud as predicate acts, a Complaint must include "the dates on which the letters were written, by whom and to whom the letters were sent, the letters' content, and the letters' role in the fraudulent scheme." *Wallace v. Abramson*, RICO Bus. Disp. Guide 6963, 1988 WL 63065, at *3 (D.D.C. June 7, 1988). *See also Bates*, 466 F. Supp. 2d at 90 (dismissing a RICO Complaint as "utterly unhelpful in discerning the meat of the plaintiffs' allegations regarding the purported fraud" because there were no details about *which* defendant

---

[26] *See also, e.g., E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 14 (D.D.C. 2014) ("Considering the high bar for plaintiffs to plead RICO violations in this Circuit and the explicit caution by the D.C. Circuit … that RICO claims premised on mail or wire fraud… must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it, the plaintiff has fallen far short of establishing a RICO claim.") (citations and internal quotation marks omitted).

sent the mail or wire, *when* or *how* the defendant used the mail and wires to further a scheme, or about the alleged transactions themselves, including dates or the content of conversations); *id.* ("The plaintiffs' unmitigated vagueness regarding which defendant played which role in the fraudulent conduct is surely inconsistent with the heightened pleading requirement of Rule 9(b)."); *Johnson v. Computer Tech. Servs., Inc.*, 670 F. Supp. 1036, 1040 (D.D.C. 1987) (dismissing a RICO claim because the plaintiff had not "alleged a single fact to show the circumstances of the mail and wire use, or of the purposefully fraudulent—rather than incidental—use of the mails or wires") (footnote omitted).  A plaintiff cannot satisfy the particularity requirement of Rule 9(b) by relying on information and belief and must, at a minimum, provide a "statement of facts upon which the information or belief is founded."  *Wallace*, 1988 WL 63065 at *3 ("Courts have held that generalized allegations of fraud based on 'information and belief' typically do not satisfy the pleading requirements of Rule 9(b).").

Plaintiff has not come close to surmounting that high bar.  Any *one* of the following deficiencies would be fatal standing alone.  Together they leave no room for doubt that Plaintiff has not stated a viable 1962(c) claim.

- There is no allegation that any of the individual defendants committed mail or wire fraud, only that either firm management or Barclays (which has not been named in Count I) did so.  *See, e.g.,* Complaint at pp.1 ("…*Barclays* and the Control Group committed approximately 114 instances of mail and wire …") (emphasis added), *id.* ("*The Control Group* committed wire fraud…"), 1-2 ("*Barclays* committed wire fraud…") (emphasis added); ¶¶68 (*certain Control Group members* knowingly and deliberately sent through the U.S. mails, by facsimile transmission and by wire…") (emphasis added), 70 ("The mailing, faxing, and wire transmittal of these financial statements *on the part of Management*…")(emphasis added).

- No allegations delineate which defendants played what role, if any, in any of the predicate acts.  Rather, Plaintiff engages in impermissible group pleading, lumping all of the Defendants together under a collective noun and failing to distinguish among them.  *See Bates*, 466 F. Supp. 2d at 92 ("Requiring the three defendants to guess amongst themselves which one is responsible for the instances of mail and wire fraud alleged by the plaintiffs is surely not in keeping with the purposes of Rule 9(b).").

27

- The Complaint refers generally to "114 instances of mail and wire fraud"—without identifying a single one of them by content, date, sender, recipient, or otherwise—and does not "allege a single fact to show the circumstances of the mail and wire use, or of the purposefully fraudulent—rather than incidental—use of the mails or wires." *Johnson*, 670 F. Supp. at 1040 (footnote omitted). Nor does Plaintiff allege that she received any of these communications via mail or wire.

- The "facts" pleaded as RICO predicate acts are impermissibly pleaded solely on "information and belief." *See* Complaint at 1 ("Based on information and belief, Barclays and the Control Group committed approximately 114 instances of mail and wire fraud…"). Indeed, Plaintiff does not allege a single "fact upon which the information or belief is founded." *Wallace*, 1988 WL 63065, at *3.

### iv. *The Complaint fails to allege a pattern of racketeering activity with the requisite specificity.*

To meet the pattern requirement, a plaintiff must point to "at least two predicate racketeering offenses over a ten year period." *Western Assoc. Ltd. P'ship v. Mkt. Square Assoc.*, 235 F.3d 629, 633 (D.C. Cir. 2001). "The pattern element exists, in part, to 'prevent ordinary business disputes from becoming viable RICO claims,' simply because the parties may have 'used the United States mails or a fax machine....'" *Harpole Architects*, 668 F. Supp. 2d at 74 (citations omitted). Because, as shown above, the Complaint does not adequately allege *any* racketeering activity, it likewise does not adequately allege a pattern of such activity.

### 2. The Complaint fails to state a claim for respondeat superior liability.

Plaintiff claims that Barclays is vicariously liable under RICO for the alleged conduct (whatever it may be) of the individual defendants, solely on the basis that Barclays "was the direct beneficiary" of that conduct because it received interest payments. Complaint ¶ 78. But, as the D.C. Circuit has noted, "'the concept of vicarious liability is directly at odds' with the Congressional intent behind § 1962(c)." *Yellow Bus Lines, Inc. v. Local Union 639*, 839 F.2d 782, 791 (D.C. Cir. 1988), *aff'd en banc*, 883 F.2d 132 (1989). "[B]efore RICO liability may be imposed it must be proven that it was the corporate policy which created the scheme or senior corporate management which implemented the scheme…." *K&S Partnership v. Continental*

*Bank, N.A.* 127 F.R.D. 664, 669 (D. Neb. 1989), *aff'd in relevant part*, 913 F.2d. 1296 (8th Cir.

1990).[27]  Plaintiff's allegations do not meet this requirement and therefore fail.

### 3.   The Complaint fails to state a claim under 18 U.S.C. §1962(a).

Section 1962(a) of RICO "makes it unlawful to use or invest income derived from a

pattern of racketeering activity in an enterprise." *Danielsen v. Burnside-Ott Aviation Training*

*Ctr., Inc.*, 941 F.2d 1220, 1229 (D.C. Cir. 1991).[28]  "[A] plaintiff claiming under § 1962(a) must

plead and prove that his injury flowed from the defendant's *use* or *investment* of racketeering

income. It is not sufficient to allege injury flowing from the predicate acts of racketeering."

*Danielsen,* 941 F.2d at 1229 (emphasis in original).  Nor may a plaintiff merely "reconfigure the

injury flowing from a § 1962(c) violation to satisfy the requirements of § 1962(a)[.]"  *Bridges v.*

*Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 43 (D.D.C. 1996) (dismissing a § 1962(a)

claim because the complaint pleaded no cognizable damages that resulted from the defendant's

---

[27] *See also, e.g., USA Certified Merchs., LLC v. Koebel*, 262 F. Supp. 2d 319, 328 (S.D.N.Y.
2003) ("corporations may not be held vicariously liable for the actions of their employees in
violation of the RICO statute where the plaintiff has not alleged any facts which portray the
company as an active perpetrator of the fraud or a central figure in the criminal scheme")
(citation and internal quotation marks omitted); *Mikhlin v. HSBC*, No. 08-CV-1302 (CPS), 2009
WL 485667, at *8 (E.D.N.Y. Feb. 26, 2009) ("Courts within the Second Circuit generally do not
impose vicarious liability under RICO unless the corporate defendant is a 'central figure' in the
RICO scheme.") (citation omitted).

[28] Congress intended to provide a remedy for those injured by money laundering and similar
investments of racketeering proceeds.  *Brittingham v. Mobil Corp.*, 943 F.2d 297, 303 (3d
Cir.1991), *overruled on other grounds*, *Jaguar Cars, Inc. v. Royal Oak Motor Car Co*., *Inc.*, 46
F.3d 258, 263 (3d Cir. 1995).  To state a § 1962(a) claim, Plaintiff must allege that the Bank (a)
received money from a pattern of racketeering activity, (b) invested or used that money in an
enterprise, and (c) that the enterprise affected interstate commerce.  *Shearin v. E.F. Hutton*
*Group, Inc.*, 885 F.2d 1162, 1165 (3d Cir. 1989), *overruled on other grounds*, *Beck v. Prupis*,
529 U.S. 494 (2000).  She must also show that she was injured by *both* the predicate act *and* the
investment or use of racketeering income.  *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153,
1188 (3d Cir. 1993).  In other words, she must show a "separate and traceable injury" arising
from the use or investment of racketeering income in the alleged enterprise distinct from the
injury alleged to result from the predicate acts.  *Craighead v. E.F. Hutton & Co., Inc*., 899 F.2d
485, 494 (6th Cir. 1990).

alleged use of racketeering income).  Dismissal is appropriate when the pleaded injury "flows directly from the predicate acts." *Dodd*, 90 F. Supp. 2d at 116 ("The Amended Complaint does not complain of injury resulting from the alleged racketeering activity or that racketeering proceeds were used or invested in an enterprise or activity separate and apart from the underlying racketeering activity. That failure is fatal to plaintiffs' claim.").

Here, Plaintiff does not plead any distinct injury resulting from the Bank's alleged investment of the money she claims it acquired through the (inadequately) alleged predicate acts of mail fraud.  Rather, she merely restates the damages she asserts under her § 1962(c) claim to serve as the basis for her § 1962(a) claim as well.  That is not sufficient.

### 4.  The Complaint fails to state a conspiracy claim under 18 U.S.C. § 1962(d).

A RICO conspiracy claim necessarily fails where, as here, a substantive violation of RICO has not been adequately alleged.  *See, e.g., Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995) (rejecting a claim under § 1962(d) when the RICO claim failed to show a pattern of racketeering under § 1962(c).

Even if the Complaint adequately pleads a 1962(c) violation, it still does not sufficiently allege facts required to support a § 1962(d) conspiracy.  Under § 1962(d), "the complaint must allege that (1) two or more people agreed to commit a subsection (c) offense, and (2) a defendant agreed to further that endeavor." *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1048, (D.C. Cir. 2012) (footnote omitted).  Thus, in addition to providing factual support for all the elements of a § 1962(c) claim, a plaintiff must demonstrate a "subjective agreement" to commit predicate acts.  *Doe I*, 400 F. Supp. 2d at 120.  Using words such as "'knowingly' as a bare, conclusory assertion, but without sufficient allegations of basic

awareness," does not show "subjective agreement or intent." *Id.*[29]

Plaintiff has alleged no facts—none—that show that either the Bank and its employees, or the Bank and the Firm's management, had a "subjective agreement."  The Complaint relies instead on general conclusory allegations, such as that the Bank and its employees "conspired with management," Complaint ¶ 101, and "knew" of, *id.* at pp. 2-3; ¶¶ 36, 48, 53-54, 67, 69, 71, 101, 113, 116, 118, 150, 164, 168, was "aware" of, *id.* at p. 1; ¶ 160, and had "superior knowledge" about, *id.* at pp. 2, 4; ¶¶ 69, 118, 130, 161, 175, the Firm's false financial statements. But it provides no *facts* demonstrating an agreement.  Instead, Plaintiff tacitly admits she lacks supporting facts by making clear that she is offering only speculative allegations that the Bank "knew, *at a minimum*, that [the statements] did not disclose material facts[,]" *id.* ¶ 69, and "*had to know* that the non-management partners, including Plaintiff, were acting on deceitful and erroneous information[,]" *id.* at p. 4 (emphasis added).  Simply injecting synonyms for "knowingly" does not make Plaintiffs bare legal conclusions stronger or sufficient.

### B. Plaintiff's State law claims are also inadequately pled.

#### 1. Plaintiff has not satisfied Rule 9(b)'s heightened pleading requirements.

Plaintiff claims that Barclays defrauded her by lending her money without telling her that her own law firm was (1) in default of its loan obligations and (2) in a "dire financial condition." *Id.* ¶¶ 105-107.  As shown above, the argument that there were any "defaults" to disclose fails as a matter of law.  Her only remaining argument is her conclusory assertion that the Bank concealed the Firm's "true financial condition" from her.  *Id.* ¶108.  As shown in Section II(A), above, the claim that the Bank knew that Dewey was failing cannot be squared with its continued

---

[29] *See also RSM Prod. Corp.*, 682 F.3d at 1048 (affirming dismissal of a § 1962(d) claim because the complaint's six allegations regarding the defendant's knowledge did not show that it knew of and "agreed to foster" the conspiracy).

lending of (and offers to lend) tens of millions of dollars directly to the Firm.  But, even if

Plaintiff's claim could pass *Iqbal*'s plausibility test, she has not pleaded fraud with the requisite

particularity.

> ### i.    *Plaintiff has not adequately alleged that Barclays owed her a duty to speak.*

Nondisclosure of a fact qualifies as fraud only when there is a "duty to speak."  *See*

*Kapiloff v. Abington Plaza Corp.*, 59 A.2d 516, 517 (D.C. 1948) ("There is, of course, no

question that mere silence does not constitute fraud unless there is a duty to speak.").  A claim

for fraud by omission must include "the source of the duty to speak."  *Republic Prop. Trust v.*

*Republic Properties Corp.*, 540 F. Supp. 2d 144, 153 (D.D.C. 2008) *rev'd and remanded sub*

*nom. Liberty Prop. Trust v. Republic Properties Corp.*, 577 F.3d 335 (D.C. Cir. 2009).  Such a

duty may arise from a fiduciary relationship or when the defendant knows that the plaintiff was

acting unaware of "a material fact [that] is *unobservable or undiscoverable* by an ordinarily

prudent person upon reasonable inspection."  *Sununu v. Philippine Airlines, Inc.*, 792 F. Supp. 2d

39, 51 (D.D.C. 2011) (citations and internal quotation marks omitted) (emphasis added).  There

is no duty to speak when a borrower and a lender have access to the same information.  *See, e.g.,*

*Saucier v. Countrywide Home Loans*, 64 A.3d 428, 440, 2013 WL 1685858 (D.C. 2013)

("[T]here was 'no duty to speak' because the guidelines and regulations were equally available to

plaintiffs/appellants and to the mortgage lenders.").

Plaintiff has not alleged any factual basis for a fiduciary relationship between her and

Barclays.[30]  The "relationship between a debtor and a creditor in a loan transaction is 'ordinarily

---

[30] Whatever relationship Plaintiff may have had with her partners and the employees of her
law firm does not create a fiduciary duty running from the Bank to her. *See, e.g., Ellipso, Inc. v.*
*Mann*, 541 F. Supp. 2d 365, 373 (D.D.C. 2008) (holding that a fiduciary relationship between a

a contractual relationship ... and is not fiduciary in nature.'" *Overseas Private Inv. Corp. v. Industria de Pesco, N.A., Inc.*, 920 F. Supp. 207, 210 (D.D.C. 1996) (citations omitted). The law recognizes a fiduciary duty between a lender and borrower only if the plaintiff identifies factual circumstances "beyond the kind that would normally exist" between a borrower and a lender that prove the existence of a special relationship of trust and confidence. *Id.* Simply saying a "special kind of relationship" exists, Complaint ¶ 168, does not make it so; a plaintiff cannot rely on conclusory statements, but rather must point to specific facts.[31] Plaintiff has not done so, offering only bare legal conclusions.[32] Nor can she do so as she is unable to allege *any* contact between herself and Barclays.

That lack of any contact between Plaintiff and Barclays is also fatal to her claim for the

---

borrower and a broker did not "translate into a fiduciary relationship" between the borrower and the lender).

[31] *See, e.g., Haynes v. Navy Fed. Credit Union*, 52 F. Supp. 3d 1, 9 (D.D.C. 2014) ("[C]onclusory statements, devoid of factual support, are insufficient to show a fiduciary relationship.") (citations omitted); *Carroll v. Fremont Inv. & Loan*, 636 F. Supp. 2d 41, 53 (D.D.C. 2009) (dismissing for failure "to state any facts that would support a legal duty owed to them, instead stating only the elements of the claims alleged in a conclusory fashion"); *Prunte v. Universal Music Grp.*, 484 F. Supp. 2d 32, 43 (D.D.C. 2007) (dismissing because the parties' dealings were "ordinary and intermittent transactions" that "cannot give rise to the special relationship of trust and confidence required for fiduciary duty to be present"); *Overseas*, 920 F. Supp. at 210 (dismissing because counterclaimants identified no special circumstances "beyond the kind that would normally exist when OPIC or any other commercial lender finances a complicated multi-party transaction"); *see Urban Investments, Inc. v. Branham*, 464 A.2d 93, 96 (D.C. 1983) (reversing finding of a fiduciary relationship because the evidence was "insufficient to support a finding that a special relationship was established...requiring appellants to treat the sale as anything other than an ordinary business transaction").

[32] *See, e.g.,* Complaint ¶¶ 159 ("Plaintiff herein enrolled in Barclays' partner capital loan program knowing that it owed the Plaintiff a fiduciary duty to disclose any and all aspects of the Firm's financial affairs, particularly those about which it was uniquely aware"), 160 ("Barclays owed Plaintiff a fiduciary duty to disclose to her any and all aspects of the Firm's financial affairs, particularly those about which it was uniquely aware…"), 168 ("As a result of Barclays' failure to disclose material facts in this special kind of relationship, Barclays breached its fiduciary duty to the non-management partners like the Plaintiff.").

additional reason that—impermissible speculation about what Barclays "had to know" aside—
she has not alleged that Barclays knew or even could have known what Plaintiff knew of her
own law firm's finances.  Even if "one party has superior knowledge of certain information" and
"that information is not readily available to the other party," there is no duty to disclose unless
"the first party knows that the second party is acting on the basis of mistaken knowledge."
*Banque Arabe et Internationale D'Investissement v. Maryland National Bank*, 57 F.3d 146, 155
(2d Cir. 1995).  A "disclosure duty ripens only when it becomes apparent to the non-disclosing
party that another party is operating under a mistaken perception of a material fact." *Remington
Rand Corp. v. Amsterdam-Rotterdam Bank NV*, 68 F.3d 1478, 1484 (2d Cir. 1995).  If the
defendant does not know that the plaintiff "is acting under a misapprehension," then there is "no
liability for nondisclosure." *Id.* (citing RESTATEMENT (SECOND) OF TORTS § 551 cmt. k (1977)).

As a Dewey partner, Plaintiff had an absolute statutory right to inspect its books and
records.  *See* New York Partnership Law § 41, *supra.*  In addition, the Dewey Partnership
Agreement provided that "[a]ny Partner, on reasonable notice, shall have the right to inspect
books and records of the Partnership at all reasonable times during regular business hours." *See*
Shaw Decl. Ex. 1 at § 5.5).  Apart from inadequate, speculative assertions that Barclays should
have known that non-management partners "for the most part" were too busy to "participate in
the Firm's management," *e.g.*, Complaint ¶¶ 153-54, 157, Plaintiff offers no factual allegations
that, if true, would establish that Barclays had any idea what *she* knew about Dewey's finances.

Although Plaintiff relies on US law (e.g., RICO) when it suits her to do so, she tries to
sidestep the inadequacy of her allegations of a fiduciary or other special relationship by asserting
that (a) English law applies to her tort claims and (b) imposes such a duty.  *Id.* ¶ 158.  Neither
assertion is correct.  First, English law does not apply to Plaintiff's tort claims.  The choice of

law provision in the contract (which Plaintiff characterizes but carefully avoids quoting) is narrowly drafted—"This facility letter shall be governed by and construed in accordance with the laws of England"—and applies on its face only to the interpretation of the contract.  Shaw Decl. Ex. 2 at § 11.1.  Numerous courts interpreting identical "governed by and construed in accordance with" language have so held.[33]

Second, even if English law does apply, it simply does not create a special relationship here.  The only English law that Plaintiff identifies as creating such a relationship plainly does not on its face, something which Plaintiff tries to gloss over by characterizing, rather than quoting, the relevant language.  Specifically, Plaintiff asserts that the PRIN 2.1(9) of the UK Financial Services Authority's Principles for Business "stat[es] that Barclays maintains a relationship of trust with clients, including the Plaintiff."  Complaint ¶ 158(d).  But PRIN 2.1(9) states nothing of the sort.  Rather, it merely provides that "A firm must take reasonable care to ensure the suitability of its advice and discretionary decisions for any customer who is entitled to rely upon its judgment."[34]  Thus, far from creating a fiduciary or other special relationship between lenders and borrowers, PRIN 2.1(9) merely requires due care where such a relationship already exists.  Here, Plaintiff has not alleged any facts supporting the existence of such a relationship, nor could she in view of her complete lack of any contact with Barclays.

---

[33] *See, e.g., Krock v. Lipsay*, 97 F. 3d 640, 645 (2nd Cir 2006) ("We see no way such language can be read broadly enough to apply to fraudulent misrepresentation."); *Benchmark Electronics, Inc. v. JM Huber Corp.,* 343 F. 3d 719, 726 (5th Cir. 2003) ("The contractual choice of law clause does not, however, address the parties' entire relationship; Benchmark's claims of fraud and negligent misrepresentation are not governed by the parties' narrow choice of law provision."); *Green Leaf Nursery v. EI DuPont De Nemours*, 341 F. 3d 1292, 1300 (11th Cir. 2003) ("The clause does not refer to related tort claims or to any and all claims or disputes arising out of settlement or arising out of the relationship of the parties"; collecting cases).

[34] The text of the Principles is available on the website of the FCA (the FSA was recently renamed) at https://fshandbook.info/FS/html/handbook/PRIN/2/1 (checked August 22, 2015).

Thus, Plaintiff has not adequately alleged that Barclays owed her any duty.

### ii. *The Complaint does not provide the requisite factual particularity concerning the alleged omissions.*

Plaintiff has not alleged any omissions with anything close to the detail required by Rule 9(b).  With the exception of her mistaken allegations, based on her misreading of the loan documents, concerning supposed pre-existing defaults—which the Court should disregard as there is nothing fraudulent about not disclosing non-existent defaults—Plaintiff fails to specifically identify any material financial information the Bank possessed to which Plaintiff herself did not have access.  (Much less any that the Bank knew she did not have access to.)  Nor does she offer any dates more specific than various multi-year periods.  *E.g.*, *id.* ¶ 108 ("Barclays specifically concealed during the time period 2006 to 2011…").  Nor does she identify a single specific communication from the *Bank* in which it distributed false financial information or should have disclosed information about Dewey's true financial health.  This complete absence of detail is fatal to her fraud claim.  *See* Section I, above.

### iii. *Plaintiff has not adequately pleaded reasonable reliance.*

Plaintiff has not adequately pleaded that she reasonably relied on the Bank's alleged omissions.  "[A] party alleging that it was defrauded, at least in the context of commercial dealings at arm's length, must establish not only that it actually relied on a false representation, but also that its reliance was objectively reasonable." *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 933 (D.C. 1992) (footnotes omitted).  A plaintiff's reliance on a defendant's misrepresentation is not reasonable if she had "an adequate opportunity to conduct an independent investigation and the party making the representation did not have exclusive access to such information." *Baker v. Gurfein*, 744 F. Supp. 2d 311, 319 (D.D.C. 2010) (citation and internal quotation marks omitted).  In *Baker,* this Court dismissed a claim based on lack of

reasonable reliance because the plaintiff "should have known that something was amiss" but failed "to take immediate action to protect her interests." *Id.* at 320 (internal quotation marks omitted). As shown above, Plaintiff had both statutory and contractual rights to review Dewey's books and records. Her claim that Firm Management denied her access to the Firm's financial books and records, Complaint ¶ 163—which she does not allege Barclays knew about—does not save her case. To the contrary, a commercial litigator with Plaintiff's decades of experience should have heard immediate alarm bells; it is hard to imagine a clearer sign "that something was amiss" and that she needed to "take immediate action to protect her interests" than her own partners and employees refusing to let her exercise her statutory and contractual rights to inspect the firm's books and records. *Baker*, 744 F. Supp. 2d at 320.

Accordingly, Plaintiff cannot establish reasonable reliance as a matter of law.

## 2. Plaintiff's aiding and abetting claim fails as a matter of law.

Aiding and abetting the tortious conduct of a third party is not a valid cause of action in the District of Columbia. *Council on Am.-Islamic Relations Action Network, Inc. v. Gaubatz*, No. CV 09-2030 (CKK), 2015 WL 1021280, at *8 (D.D.C. Mar. 6, 2015) ("[T]he Court can swiftly resolve Plaintiffs′ theory of aiding and abetting liability. Because the D.C. Court of Appeals has not recognized a claim for aiding and abetting a tort, this claim fails."); *3M Co. v. Boulter*, 842 F. Supp. 2d 85, 119 (D.D.C. 2012) ("According to the District of Columbia Court of Appeals, to which this Court looks on issues of District of Columbia law, the tort of aiding and abetting is not recognized under District law."). Aiding and abetting is not "independently actionable in the absence of an underlying tort." *Plummer*, 934 F. Supp. 2d at 198 (Bates, J.). Accordingly, Plaintiff's aiding and abetting claim falls with her inadequately pled tort claim.

Even if her tort claim were viable, her aiding and abetting claim would still be defectively

pled.  Because Plaintiff's aiding and abetting claim sounds in fraud, she must satisfy the

particularity requirement of Rule 9(b).  *See, e.g., Silverman v. Weil*, 662 F. Supp. 1195, 1200

(D.D.C. 1987) *aff'd*, 839 F.2d 824 (D.C. Cir. 1988) ("[P]laintiffs still fail to allege the aiding and

abetting charges with the requisite particularity necessary under the Rule.").

A plaintiff must plead with particularity that: "(1) the party whom the defendant aids

must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of

his role as part of an overall illegal or tortious activity at the time that he provides the assistance;

(3) the defendant must knowingly and substantially assist the principal violation." *Halberstam v.

Welch,* 705 F.2d 472, 477 (D.C.Cir.1983) (citations omitted).  A claim of aiding and abetting

"cannot be maintained" if the plaintiff does not adequately plead that a defendant "knowingly or

substantially assisted… in the commission of any tortious activity…" *Acosta*, 711 F. Supp. 2d at

108.  *"*Simply stating that the … Defendants generally provided aid to a third party, who in turn

purportedly engaged in tortious activity, is not enough; rather, the plaintiffs are required to plead

a link between the aid rendered and the principal violation (or violations) alleged." *Id.; see also

Carroll v. Fremont Inv. & Loan*, 636 F. Supp. 2d 41, 54 (D.D.C. 2009) (dismissing an aiding and

abetting claim because the plaintiff did not "make any factual allegations regarding the way" the

defendant substantially assisted in the unlawful conduct).

As with her fraud claim, Plaintiff pleads no fact—none—that shows that the Bank

knowingly played a role in the Firm's overall fraudulent activity, or that it substantially assisted

in any way.  Rather, the Complaint itself reveals that it is not based on facts but merely on

speculative assumptions.  *See, e.g.,* Complaint ¶ 69 (stating that the Bank "knew, *at a minimum*,

that [the statements] did not disclose material facts"); *id.* at 4 ("Barclays *had to know* that the

non-management partners, including Plaintiff, were acting on deceitful and erroneous

information"). Such speculation is insufficient.

### 3. Plaintiff's negligence claim fails as a matter of law.

Plaintiff's negligence claim fails for many of the same reasons. Her pre-existing default theory is wrong as a matter of law; her own allegations establish that her story is implausible; and her remaining allegations regarding supposed omissions are too sketchy and conclusory.

Moreover, Plaintiff has not adequately alleged that Barclays owed her a duty of care. "The foundation of modern negligence law is the existence of a duty owed by the defendant to the plaintiff. Negligence is a breach of duty; if there is no duty, there can be no breach, and hence no negligence." *Jolevare v. Alpha Kappa Alpha Sorority, Inc.*, 521 F. Supp. 2d 1, 15 (D.D.C. 2007) (citations omitted). Plaintiff has conclusorily asserted—but not alleged any factual basis for—the existence of a duty. *See* Complaint ¶¶ 136 ("Although Barclays owed various duties to the non-management partners…"); 139 ("Barclays beached the duty it owed to the non-management partners to exercise reasonable care…"; 143(a) ("Barclays…failed to exercise reasonable care consistent with its contractual obligation under English law…");[35] 143(b) ("Barclays…failed to discharge its duty to the non-management partners…").

There is no general duty between a debtor and a creditor. *See Findlay v. CitiMortgage,*

---

[35] Plaintiff cannot rely on a "contractual obligation" to create a duty that would support a negligence claim. *See Choharis v. State Farm Fire and Cas. Co.,* 961 A.2d 1080, 1089 (D.C.2008) ("[T]he tort must exist in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship. The tort must stand as a tort even if the contractual relationship did not exist."); *Friends Christian High Sch. v. Geneva Fin. Consultants,* 39 F. Supp. 3d 58, 64, 2014 WL 1623754 (D.D.C. 2014) (dismissing a plaintiff's negligence claim against an escrow agent because there was not duty of care between the parties outside of the contractual obligation); *Carter v. Bank of Am, N.A.*, 888 F. Supp. 2d 1, 15 (D.D.C. 2012) ("The plaintiff has alleged no facts that could sustain a claim of negligence or gross negligence independently against any of the defendants if her contractual relationship with them did not exist. Accordingly, this claim must be dismissed.").

*Inc.*, 813 F. Supp. 2d 108, 120 (D.D.C. 2011) ("The relationship between a debtor and creditor is ordinarily a contractual one, lacking any fiduciary duties."). This Court has explained that a duty between a debtor and creditor may arise when "a lender undertakes a duty to a borrower when its employees make certain assurances to the borrower during the loan negotiation process." *Id.* *See also High v. McLean Fin. Corp.*, 659 F. Supp. 1561, 1570 (D.D.C. 1987) ("The Complaint alleges that defendant extended assurances that there were 'no problems' with plaintiffs' application; this alleged statement implies that defendant actually examined whether problems existed."). If a plaintiff provides no facts supporting the existence of a special relationship, however, dismissal is appropriate. *See, e.g., Busby*, 932 F. Supp. 2d at 146 (dismissing complaint because plaintiff stated "no facts supporting the existence of a fiduciary or any other relationship which might give rise to a duty of care"); *Plummer*, 934 F. Supp. 2d at 199 (Bates, J.) ("He alleges no facts about what duty may have been breached, and thus these claims are insufficient.").

The Complaint alleges no contact whatsoever between Plaintiff and the Bank, much less contact sufficient to create a special relationship that would give rise to a duty of care. While the Complaint alleges that the Bank acted with a "clear indifference to the non-management partners' interests except when it came to securing their signatures on the loan documentation[,]" it does not allege that it gave them any assurances. Complaint ¶ 141. Even if partners subjectively "expected" the Bank to notify them of any "events of default" that occurred (and none did), *id.* ¶ 131, that would not create a legal duty absent specific assurances by the Bank.

Furthermore, the Complaint should be dismissed because it establishes Plaintiff's contributory negligence as a matter of law. *See, e.g., Lee v. United States*, 570 F. Supp. 2d 142, 155 n. 20 (D.D.C. 2008) (Bates, J.) ("A claimant who is contributorily negligent is completely

barred from recovery."). A plaintiff is contributorily negligent if she fails "to act with the prudence of an ordinary reasonable person under the circumstances." *Krombein v. Gali Serv. Indus., Inc.*, 317 F. Supp. 2d 14, 18 (D.D.C. 2004) (citation and internal quotation marks omitted). *See also* RESTATEMENT (SECOND) OF TORTS § 464 (1965) ("…the standard of conduct to which he must conform for his own protection is that of a reasonable man under like circumstances."). There are cases "with evidence so clear and unambiguous that the court must find contributory negligence as a matter of law." *Krombein*, 317 F. Supp. 2d at 18; *see also D.C. Transit Sys., Inc. v. Harris*, 284 A.2d 277, 278 (D.C. 1971) (reversing a trial court's denial of a motion for a directed verdict because defendant was contributorily negligent as a matter of law).

This is such a case. Plaintiff was negligent in not reviewing her own Firm's financial records, even though she had both statutory and contractual rights to do so. She asserts that she did not exercise her rights because she was too busy, "with little time available," to examine the Firm's finances, Complaint ¶154, and claims that she was "specifically instructed by Firm Management that she would not have access to the Firm's books and records[,]" *id.* ¶163. Such a prohibition—in derogation of her statutory and contractual rights—would immediately raise a red flag for any reasonable person, let alone a sophisticated attorney who is being asked to borrow and invest nearly $200,000 in a business. A reasonable person, especially an attorney, however "busy" she might be, would not make such an investment without exercising her legal rights to information, particularly in the face of such a clear warning sign.

In *Redmond v. State Farm Ins. Co.*, 728 A.2d 1202, 1208 (D.C. 1999), the D.C. Court of Appeals held that a seasoned real estate and property management professional's negligence claim was barred by his contributory negligence in failing to read his homeowner's insurance policy. Similarly, in *E.F. Hutton Mortgage Corp. v. Pappas*, 690 F. Supp. 1465 (D. Md.

1988),[36] the court found contributory negligence "as a matter of law" where the plaintiff had a

right to inspect relevant financial information but "took no steps to enforce its contractual right."

*Id.* at 1475-1477.  Plaintiff was likewise contributorily negligent as a matter of law.

Plaintiff's negligence claim is also barred by the economic loss doctrine.  "The economic

loss doctrine in the District of Columbia bars recovery of purely economic losses in

negligence…" *Aguilar v. RP MRP Washington Harbour, LLC*, 98 A.3d 979, 985-86 (D.C. 2014).

Therefore, "a plaintiff who suffers only pecuniary injury as a result of the conduct of another

cannot recover those losses in tort." *Id.* at 982 (citation and internal quotation marks omitted).

"Where pure economic loss is at issue[,] not connected with any injury to one's body or property,

... the reach of legal liability is quite limited." *Id.* at 983 (citations omitted).  Because Plaintiff

claims only financial losses, her negligence claim is barred by the economic loss doctrine.

### 4.  Plaintiff's fiduciary breach claim fails as a matter of law.

As shown above, Plaintiff has not adequately pleaded the existence of a fiduciary duty,

which is an element of her claim.  *See* Section V(B)(1)(i).  Accordingly, her fiduciary breach

claim fails as a matter of law.

### 5.  Plaintiff's criminal conspiracy claim fails as a matter of law.

This Court routinely dismisses criminal conspiracy claims because D.C. law recognizes

no such private right of action.[37]  Accordingly, Plaintiff's criminal conspiracy claim fails as a

---

[36] Maryland law, which is the genesis of DC's common law, is especially persuasive in DC courts.  *See, e.g., Gerace v. Liberty Mut. Ins. Co.*, 264 F. Supp. 95, 97 (D.D.C 1966) ("decisions of the Maryland courts on points not determined by the Court of Appeals of the District of Columbia or by the Supreme Court of the United States are, if not completely controlling, nevertheless, of great weight, of greater weight than the decisions of other States.").

[37] *See, e.g., Rice v. Holder*, 898 F. Supp. 2d 291, 293 (D.D.C. 2012) (dismissing a claim that the defendant engaged in criminal conspiracy due to lack of a private right of action); *Bell v.*

matter of law.

### 6. Plaintiff's declaratory judgment claim should also be dismissed.

"A count for a declaratory judgment is not cognizable as a separate cause of action, but is more properly included in the[ ] prayer for relief." *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 120 (D.D.C. 2013) (citation and internal punctuation omitted).  It should, therefore, be dismissed.  *Id.  See also Donald Marshall Berlin v. Bank of Am, N.A.*, No. CV 14-1306 (JEB), 2015 WL 1873219, at *5 (D.D.C. Apr. 24, 2015) ("To the extent Plaintiffs seek to assert a cause of action for 'declaratory judgment,' it is dismissed.").  Accordingly, Plaintiff's declaratory judgment claim should be dismissed.

### CONCLUSION

Plaintiff is understandably angry that the business she invested her time and money in failed and that those she and her fellow partners trusted to run it for them appear not to have done it well and honestly.  She is understandably frustrated that she cannot pursue those actually responsible.  But her anger and her frustration cannot fix the many defects that bar her claims against the Defendants.  They cannot render her story plausible; they do not create fictional "defaults" that should have been disclosed; they do not make her suit timely; they do not permit her to circumvent the PSLRA RICO bar; they do not render her conclusory allegations sufficient to state a claim; and they cannot paper over the many other defects that doom her claims as a matter of law.  Nor do they justify imposing the burden and expense of this lawsuit on Andrew Johnman, Iain Worsley, Sally Martin, or Barclays.

We respectfully submit that this Court should dismiss this lawsuit with prejudice.

---

*Grant*, No. CIV.A 09 1868, 2009 WL 3135442, at *1 (D.D.C. Sept. 30, 2009) (same); *Abou-Hussein v. Gates*, 657 F. Supp. 2d 77, 81 (D.C. Cir. June 11, 2010) (same).

Dated this 28th day of August 2015.

*/s/ Jonathan M. Shaw*
Jonathan M. Shaw.
D.C. Bar:  446249
Boies, Schiller & Flexner, LLP
5301 Wisconsin Ave. N.W., Suite 800
Washington, DC 20015
(202) 237-2727
(202) 237-6131 (fax)
jshaw@bsfllp.com
*Counsel for Barclays Bank PLC and
Andrew Johnman*

*/s/ Richard H. Gordin*
Richard H. Gordin
D.C. Bar:  925727
Butzel Long
1747 Pennsylvania Ave. NW, Suite 300
Washington, DC 20006
(202) 454-2800
(202) 454-2805 (fax)
gordin@butzel.com
*Counsel for Iain Worsley*

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2015, the foregoing **MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) FILED BY BARCLAYS BANK PLC, IAIN WORSLEY, AND ANDREW JOHNMAN AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** and exhibits thereto, were filed electronically using the Court's ECF system, which will send notification of such filing to counsel of record.

*/s/ Jonathan M. Shaw*
Jonathan M. Shaw
D.C. Bar: 446249
Boies, Schiller & Flexner, LLP
5301 Wisconsin Ave., N.W., Suite 800
Washington, DC 20015
Phone:  202-237-2727
Fax:      202-237-6131